No. 1 February 4, 2016 531

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ALEN VLADIMIR SIMONOV,
*Respondent on Review.*

(CC CF110325; CA A151415; SC S063135)

On review from the Court of Appeals.*

Argued and submitted November 12, 2015.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Lindsey Burrows, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

BREWER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Umatilla County Circuit Court, Christopher Brauer, Judge. 269 Or App 735, 346 P3d 589 (2015).

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

BREWER, J.

Defendant appeals a judgment of conviction for unauthorized use of a vehicle (UUV), a felony offense that is committed when a person "takes, operates, exercises control over, rides in or otherwise uses another's vehicle *** without consent of the owner." ORS 164.135(1)(a). At trial, defendant requested an instruction that, to reach a guilty verdict, the jury must find that he knew that the use of the vehicle was without the owner's consent; instead, the trial court instructed the jury that it could convict defendant if it found that he was criminally negligent with regard to whether the owner had consented. The Court of Appeals reversed defendant's ensuing conviction on the ground that the charged offense requires that the person riding in the vehicle knows that the vehicle is being used without the owner's consent, the trial court therefore improperly instructed the jury, and the error was reversible. *State v. Simonov*, 269 Or App 735, 346 P3d 589 (2015). For the reasons explained below, we affirm the decision of the Court of Appeals, reverse the judgment convicting defendant, and remand to the circuit court for further proceedings.

## I.   FACTS AND PROCEDURAL BACKGROUND

Because criminal defendants are entitled to have the jury instructed in accordance with their theory of the case if the instructions correctly state the law and there is evidence to support giving them, *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999), we set out the facts consistent with that standard. At trial, the state presented evidence that defendant and his brother, Vadim, talked to their neighbor, Goodnow, about purchasing a 1983 Datsun pickup truck. Goodnow testified that she agreed to allow the brothers to take the truck to a car wash in Pendleton to check for an oil leak. Goodnow watched the brothers drive away. Because the brothers failed to return the truck when she expected them to, Goodnow reported the truck stolen. Defendant later left a voicemail message stating, "I'm in Portland. We're bringing the truck back." Goodnow saw Vadim pull the truck into her driveway several hours later, with defendant in the passenger seat.

At trial, defendant claimed that Vadim had obtained permission to use the truck and that defendant had not known that the brothers' use of the vehicle exceeded the scope of the consent that Goodnow had given. To support that theory, defendant presented evidence that Vadim, not defendant, had received permission from Goodnow to borrow the truck and that defendant did not know that Vadim had violated Goodnow's instructions. Vadim testified that he had talked to Goodnow about taking the truck to a mechanic, but he insisted that defendant neither overheard that conversation nor knew what Goodnow and Vadim had discussed. According to Vadim, the brothers took the truck to a mechanic in Hermiston, stopping at a gas station on the way. The truck failed to start, so defendant called his girlfriend to pick him up at the gas station. The mechanic met Vadim at the station and got the truck running. Vadim left defendant at the station, drove to Portland to deliver money to his wife, and then picked defendant up from his girlfriend's house in Pendleton on the way back to Goodnow's house.

In charging defendant with violating ORS 164.135(1)(a), the indictment in this case alleged a culpable mental state of "criminal negligence" for the "without consent" element of the offense. In accordance with his theory of the case, defendant requested the following jury instruction:

> "Oregon law provides that a person commits the crime of unauthorized use of a vehicle when the person knowingly rides [in] another's vehicle without the consent of the owner.

> "In this case, to establish the crime of unauthorized use of a vehicle, the state must prove beyond a reasonable doubt the following four elements:

> "* * * * *

> "(4) [Defendant] knew the use of [the 1983] Datsun Pickup was without the consent of the owner."

Defendant also sought an instruction that, "[w]hen used in the phrase '[defendant] knew the use of [the] vehicle was without the consent of the owner,' 'knowingly' or 'with knowledge' means that the person acts with an awareness that he had [actual] knowledge [of] the lack of consent of the owner."

The trial court declined to give those instructions and, instead, instructed the jury as follows:

"Oregon law * * * provides that a person commits the crime of unauthorized use of a vehicle when a person unlawfully and with criminal negligence takes, operates, exercises control over, rides in or otherwise uses another's vehicle without the consent of the owner.

"In this case, to establish the crime of unauthorized use of a vehicle, the State must prove beyond a reasonable doubt * * * [that defendant] failed to be aware of a substantial and unjustifiable risk that he did not have the consent of the owner.

"A person acts with criminal negligence if that person fails to be aware of a substantial and unjustifiable risk that a particular result will occur or a particular circumstance exists.

"* * * * *

"When used in the phrase, [']the defendant * * * did unlawfully and with criminal negligence take, operate, exercise control over, ride in and otherwise use a vehicle, a 1983 Datsun pickup[,] without the consent of the owner * * *,['] criminal negligence or criminally negligent means that the person fails to be aware of a substantial and unjustifiable risk that the 1983 Datsun pickup was being operated, controlled, [ridden] in or otherwise used without the consent of the owner."

On appeal, defendant assigned error to the instruction that criminal negligence is a sufficient culpable mental state to prove the "without consent" element of UUV and to the trial court's corresponding failure to instruct the jury that the state had to prove that defendant had known that the vehicle was being used without the owner's consent. The state responded that the trial court properly instructed the jury in accordance with ORS 161.115(2), which provides that, if the legislature has not prescribed a culpable mental state for a particular offense, any among a range of culpable mental states—intent, knowledge, recklessness, or criminal negligence—will suffice. The Court of Appeals reversed, concluding that it was bound by several of its prior decisions holding that "knowledge" is the minimum culpable mental state that can apply to an owner's lack of consent with

respect to the offense of UUV. *Simonov*, 269 Or App at 743. We allowed the state's petition for review to determine the minimum culpable mental state required for the "without consent" element of that offense.

In support of its position that the minimum statutory level of culpability—criminal negligence—is applicable, the state relies on a series of interconnected propositions. The state first acknowledges that Oregon law generally requires proof of a culpable mental state for a crime defined in the Oregon Criminal Code and that most elements of such crimes also require proof of a culpable mental state. The state further notes that, under ORS 161.085, the applicable culpable mental state(s) for an element generally depend on the type of element at issue, in particular whether the element describes a "circumstance," a "result," or "conduct." The state next observes that criminal negligence is a sufficient culpable mental state to establish a circumstance, ORS 161.085(10), whereas knowledge is the minimum culpable mental state for conduct elements. ORS 161.085(8).

Proceeding from those propositions, the state argues that the owner's lack of consent in a UUV prosecution is a circumstance, not conduct, because it is an "accessory fact" that accompanies an offender's physical act. According to the state, the owner's lack of consent is a fact that exists independently of the offender's act and therefore is distinguishable from conduct. It follows, the state reasons, that the trial court did not err by instructing the jury that criminal negligence was a sufficient culpable mental state to prove the "without consent" element of UUV in this case.

Defendant responds that an owner's lack of consent is part of the "conduct" proscribed by ORS 164.135(1)(a) and, therefore, the minimum culpability requirement is knowledge of that fact. ORS 161.085(8). As defendant sees it, conduct includes the "essential nature" of criminal activity that makes it culpable. Defendant agrees with the state that a "circumstance" is an accessory fact that accompanies an offender's conduct and that criminal negligence is a sufficient mental state to establish, with respect to a circumstance, to hold a defendant culpable. However, according to defendant, the owner's lack of consent is part of the essential

nature of the offense of UUV, which means that proof of his knowledge of that fact was required and that the trial court therefore erred in instructing the jury that criminal negligence was sufficient.

## II.  ANALYSIS

### A.  *Core Principles*

At the outset, we describe certain core principles that guide our analysis. "In Oregon, criminal liability generally requires an act that is combined with a particular mental state." *State v. Rutley*, 343 Or 368, 373, 171 P3d 361 (2007). The statute defining an offense determines its applicable mental state (or mental states), as informed by the Oregon Criminal Code[1] general culpability provisions, ORS 161.085 to 161.115. *Id.* For crimes defined and set out in the Criminal Code—including ORS 164.135—every "material element" of the offense ordinarily requires proof of a culpable mental state. ORS 161.095(2) ("Except as provided in ORS 161.105 [governing violations and crimes outside the Criminal Code], a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state.").[2] An element is "material" unless it relates "solely to the statute of limitations, jurisdiction, venue" or similar matters. *State v. Blanton*, 284

---

[1] ORS 161.005 spells out precisely which provisions of the Oregon Revised Statutes may be cited as the "Oregon Criminal Code of 1971," commonly referred to as the "Oregon Criminal Code" without the date. *See, e.g.*, ORS 161.535 (referring to "the Oregon Criminal Code"); *State v. Rainoldi*, 351 Or 486, 491, 268 P3d 568 (2011). ORS 164.135 is within the Criminal Code.

[2] By its terms, the circular requirement that there be proof of a culpable mental state for "each material element of the offense that necessarily requires a culpable mental state" applies "[e]xcept as provided in ORS 161.105." *State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978). The exception to which ORS 161.095 refers provides, in part:

"Notwithstanding ORS 161.095, a culpable mental state is not required if:

"* * * * *

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

ORS 161.105(1)(b). The statutes thus impose different requirements, depending on whether the offense at issue is defined by a statute within the Oregon Criminal Code.

Or 591, 595, 588 P2d 28 (1978). In practice, then, most elements of offenses set out in the Criminal Code require proof of a culpable mental state.

The legislature sometimes has expressly provided mental states for all or certain of the elements of offenses in the Criminal Code, including the lack of a victim's consent.[3] If a statute defining an offense in the Criminal Code includes a single mental state "but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense." ORS 161.115(1).

If, as with the UUV statute, ORS 164.135(1)(a), the statute does not prescribe a culpable mental state for all or some of the material elements of the offense, "culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115(2). Those four enumerated mental

---

[3] The first-degree rape statute, ORS 163.375, provides an apt illustration. That statute provides:

"(1) A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"(a) The victim is subjected to forcible compulsion by the person;

"(b) The victim is under 12 years of age;

"(c) The victim is under 16 years of age and is the person's sibling, of the whole or half blood, the person's child or the person's spouse's child; or

"(d) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

The requisite mental state to convict a defendant of that offense depends on the state's theory of lack of consent. If lack of consent exists because the victim is under the age of 16, then no culpable mental state is required, creating the strict-liability offense of statutory rape. *See* ORS 163.325(1) (providing that, in such circumstances, "it is no defense that the defendant did not know the child's age or that the defendant reasonably believed the child to be older than the age of 16"). If lack of consent exists because the victim is "under a specified age other than 16," then only a reasonable mistake will excuse the defendant's conduct, and the applicable mental state is criminal negligence. *See* ORS 163.325(2) (providing that, in such circumstances, "it is an affirmative defense for the defendant to prove that the defendant reasonably believed the child to be above the specified age at the time of the alleged offense"). But, if lack of consent is based on the victim's incapacity, then an honest mistake, even if unreasonable, will excuse the defendant's conduct, meaning that the applicable mental state is knowingly. *See* ORS 163.325(3) (providing that, in such circumstances, "it is an affirmative defense for the defendant to prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent").

states do not freely apply to any element; rather, they each apply only to particular types of elements. *State v. Crosby*, 342 Or 419, 428-29, 154 P3d 97 (2007). The definition of each mental state specifies the types of elements to which the mental state applies:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists.

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"(10) 'Criminal negligence' or 'criminally negligent' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(7) - (10).

To identify which mental state applies when a statute does not prescribe a culpable mental state for material elements of the offense, it is necessary to determine the type or types of those elements. Unless otherwise indicated for a particular offense, "conduct" elements require proof of an intentional or knowing mental state, "result" elements require proof of an intentional, reckless, or criminally negligent mental state, and "circumstance" elements require

proof of a knowing, reckless, or criminally negligent mental state. *Id*. The state may plead and prove the least culpable of the applicable mental states for a particular element of an offense. ORS 161.115(3). As a result, the minimum culpable mental state for elements that constitute conduct is knowledge, and the minimum culpable mental state for result and circumstance elements is criminal negligence.

As explained below, ORS 164.135 does not expressly prescribe the applicable mental state(s) for any of the elements of UUV. It follows that, if the owner's lack of consent is part of the conduct that the offense of UUV proscribes, the minimum culpable mental state for that element is knowledge, and the trial court improperly instructed the jury. Thus, the dispositive issue on review is whether the "without consent" element of UUV is part of the conduct proscribed by the offense or whether it is a circumstance.

B.   *The Nature and Scope of Conduct*

Unlike "result" or "circumstance," "conduct" is defined within the Code: "'Conduct' means an act or omission and its accompanying mental state." ORS 161.085(4). An "act" is "a bodily movement." ORS 161.085(1). An "omission" is "a failure to perform an act the performance of which is required by law." ORS 161.085(3). Because conduct consists of an act (or omission) and an accompanying mental state, the applicable mental state necessarily informs and shapes the meaning of "conduct."

As noted, the accompanying mental state for conduct elements is assigned by the statute defining an offense within the Criminal Code. *Crosby*, 342 Or at 429. If no mental state is provided for a conduct element, the minimum culpable mental state is "knowingly." ORS 161.085(8); ORS 161.115(2). "'Knowingly' or 'with knowledge,' when used with respect to conduct *** means that a person acts with an awareness that the conduct of the person is of a nature so described ***." ORS 161.085(8). When used with respect to "conduct," "knowledge" therefore applies to more than a bodily movement; the person also must be aware that the "conduct" is "of a nature so described." *Id*. "Nature," in turn, refers to "the essential character or constitution of something ***; esp : the essence or ultimate form of something." *Webster's*

*Third New Int'l Dictionary* 1507 (unabridged ed 2002). The phrase "so described" in ORS 161.085(8) directs the reader to the statute defining the offense, which describes the entire conduct proscribed by the legislature. The other mental state that applies to conduct elements, "intentionally," includes similar phrasing. *See* ORS 161.085(7) ("'Intentionally' *** means that a person acts with a conscious objective *** to engage in the conduct so described."). Read together, then, the definitions of the mental states that apply to "conduct" indicate that they do not merely apply to a particular bodily movement; they also more broadly apply to other elements that describe the nature, that is, the essential character, of the prohibited act.

Other pertinent statutory context reinforces that conclusion. ORS 161.150 provides that "[a] person is guilty of a crime if it is committed by the person's own conduct or by the conduct of another for which the person is criminally liable, or both." In addition, ORS 161.095(1), which defines the minimum requirements of criminal liability, provides:

> "The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing."

In both of those provisions, "conduct" is the foundation of criminal liability, which is consistent with the principle that conduct elements are those that describe the nature or essential character of the defendant's act or omission. The question, then, is how conduct differs from circumstance.

The theft statutes provide an example of the role of circumstance elements in a criminal offense. "Theft" in any degree is defined by ORS 164.015, which describes the prohibited conduct (the taking of property) and the applicable mental state (intent to deprive another of property). The prohibited conduct for theft in any degree is the taking of another's property with the intent to deprive the owner of it. *Id.* A person commits first-degree theft when the person commits theft as defined in ORS 164.015, and the value of the property is $1,000 or more. ORS 164.055. If the value of the property is $100 or more and less than $1,000, the person commits second-degree theft, and if the value of the

property is less than $100, the person commits third-degree theft. ORS 164.045 (second-degree theft); ORS 164.043 (third-degree theft).

The specific value of the stolen property does not change the essential character of the prohibited conduct. Accordingly, the value of the stolen property for any degree of theft is a circumstance; it is an accessory fact that accompanies, not modifies, the defendant's conduct. *See State v. Jones*, 223 Or App 611, 621, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009) (holding that, under a prior version of the first-degree theft statute requiring proof that the value of the property was over $750, the state was not required to prove that the defendant *knew* that the value of the property exceeded $750).

This court's previous case law provides some assistance in distinguishing between elements that describe circumstances and other elements. In *Crosby*, this court recognized that, "[w]ithout definitions, it is not always easy to determine how to categorize a specific material element of a crime." 342 Or at 429. In that case, the court grappled with the issue whether a victim's death in ORS 163.118(1)(c) (defining first-degree manslaughter) is a circumstance or a result. *Id.* at 430-31. In concluding that death in that context was a result, the court reasoned:

> "Death is not merely an accessory fact that accompanies the defendant's conduct. The object of the mental state 'recklessly' is 'causes death.' That object, 'death,' is not a 'circumstance' here; no defendant could be reckless 'that the circumstance [death] exists.' ORS 161.085(9). Instead, death is a result; a defendant can be reckless 'that the result [death] will occur.' *Id.* For a defendant to have committed manslaughter under ORS 163.118(1)(c), then, the defendant must have been 'aware of and consciously disregard[ed] a substantial and unjustifiable risk' of causing a result: death."

*Crosby*, 342 Or at 430-31. This court's description in *Crosby* of a circumstance as "an accessory fact that accompanies the defendant's conduct" is consistent with the dictionary definition of that term. *See Black's Law Dictionary* 296 (10th ed 2014) (defining "attendant circumstance" as "a fact that is situationally relevant to a particular event or occurrence").

Although it involved a somewhat different issue pertaining to an offense outside the Criminal Code, this court's decision in *State v. Rainoldi*, 351 Or 486, 488, 268 P3d 568 (2011), also is instructive. In that case, this court interpreted ORS 166.270(1) (defining felon in possession of a firearm, an offense codified outside the Criminal Code) in determining whether the element that the defendant previously had been convicted of a felony required proof of a culpable mental state. This court in *Rainoldi* outlined a four-factor test for determining whether the legislature intended to dispense with a culpable mental state for an element of an offense outside the Criminal Code. *Id.* at 492-95. The second factor requires the court to determine "the nature of the element at issue." *Id.* at 493.

In explaining that factor, this court distinguished between conduct and "status," observing that conduct historically required proof of a culpable mental state, whereas status, such as the fact that a person has been convicted of a felony, did not. *Id.* at 497 ("[W]e note that proof that the defendant 'has been convicted of a felony' refers to an established class of persons who are not permitted to possess firearms. As such, the element refers to a status, as opposed to conduct, which ordinarily does not require proof of a culpable mental state."). Although a particular "status" sometimes is required to complete a crime, it generally is not part of the essential character of a proscribed act; in fact, the defendant's mental state usually has nothing to do with whether the status exists. *See, e.g.*, *State v. Miller*, 309 Or 362, 369, 788 P2d 974 (1990) ("Having a certain [blood alcohol content] or being under the influence is a status, and a person's mental state has nothing to do with whether that status exists. The statute requires only that the state prove that a defendant had the status while driving, not that the defendant knew or should have known of it.").[4]

_____

[4] Another case to which the parties refer is *Rutley*, which involved the unlawful delivery of controlled substances within 1,000 feet of a school. *Rutley* arose under *former* ORS 475.999 (1999), *renumbered as* ORS 475.904 (2005), an offense outside the Criminal Code. The principal issue in *Rutley* was whether *former* ORS 475.999 required a defendant to know that he was within 1,000 feet of a school when he delivered a controlled substance. 343 Or at 370. The court concluded that the legislature clearly intended to dispense with the culpable mental state requirement with respect to the distance element based on three factors: "[T]he

To paraphrase this court's statement in *Crosby*, the line between conduct and other elements is not always easy to draw. It could be argued, in a broad sense, that every element that is required to create criminal liability is part of the essential character of the defendant's act or omission. If that view were correct, the meanings of conduct and circumstance would confusingly overlap. But, as our previous decisions show, the line between the two types of elements, although sometimes difficult to discern, nevertheless is a principled one. To constitute conduct, an element must make the defendant's own act or omission of a described nature, which stands in contrast to circumstance elements of an offense that refer to facts that attend or accompany the defendant's conduct. Whether a particular element— including lack of permission or consent—constitutes part of the defendant's conduct or is a circumstance depends on a careful examination, using well-established statutory interpretation principles, of the role of the element in the offense and its relationship to the other elements.

Although the legislative history of the Criminal Code's culpability provisions is of limited use in illuminating the issue before us, it does merit brief discussion. The 1971 Criminal Code was the product of a years-long revision of Oregon's criminal laws by the Criminal Law Revision Commission. The Commission's discussions of early drafts of the Code reveal that the drafters were divided about the meanings of conduct and circumstance. *See, e.g.*, Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Dec 18, 1968, Tape 29, Side 1 (Commission members disagreeing over meaning of "attendant circumstance" in a variety of hypotheticals). In addition, some of the drafters were skeptical of including criminal negligence as a minimum culpable mental state. In a subcommittee discussion of culpability requirements, Law Commission reporter Courtney Arthur objected that punishing conduct that was

---

legislature's obvious intent to protect children from predatory drug dealers by enhancing the penalty for delivery in the vicinity of a school, the grammatical structure of the statute's text, and the nature of the element (no mental state is logically required for a distance element)[.]" *Id.* at 377. Based on the issue before it, in the context of an offense outside the Criminal Code, the court in *Rutley* had no occasion to characterize the distance element of the charged offense by type. That issue simply was not relevant to the analysis.

merely negligent would impose criminal consequences on persons who were not aware that they had created the risk of harm for which they were punished. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Dec 18, 1968, Tape 29, Side 2. Punishment for negligent acts or omissions, Arthur opined, would not lead to reform or the deterrence of future criminal conduct. *Id.*

Based on that reasoning, the minimum default culpable mental state for any element under the original proposed Code was "recklessness." *Id.* Negligence was "viewed as an exceptional basis for liability" that would apply only if a particular statute defining an offense specified it as the applicable mental state. *Id.* (statement of Project Director Donald Paillette). That view apparently prevailed through the presentation of the final preliminary draft to the full Commission. Preliminary Draft No. 4, Criminal Law Revision Commission, Article 2, § 3 (Apr 1969). Paillette explained the provision to the full Commission, stating,

> "The use of 'criminal negligence' has been limited so that it will not generally apply; in fact, it is specifically said that it will not apply unless it clearly appears by wording of the statute defining the crime. This does not depart from the [Model Penal Code]."

Minutes, Criminal Law Revision Commission, June 17, 1969. The full Commission approved that draft. *Id.*

Later, without recorded discussion, the Commission amended the minimum culpable mental state provision to the form that the legislature enacted:

> "Except as provided in ORS 161.105 [related to violations and strict-liability offenses], if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

ORS 161.115(2). The Commentary to the Code provides no explanation for that change, stating only that "[t]his section provides a statutory framework for construing penal statutes as regards their culpability content, and the application of the culpable mental state requirement to

specific offenses." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 10, 9 (July 1970). In the end, the drafters' eventual willingness to make criminal negligence an applicable mental state for circumstance and result elements does not meaningfully inform the inquiry before us.

To summarize: The determination whether a particular element of an offense within the Criminal Code requires a culpable mental state and, if so, what mental state is required, ultimately is a matter of legislative intent. The statutory interpretation inquiry is holistic, but certain guidelines are useful. As pertinent here, when an element of an offense within the Criminal Code describes the nature, that is, the essential character, of a proscribed act or omission, it generally is a conduct element, and (unless different mental states are specified in the statute defining the offense), the minimum culpable mental state is knowledge. In contrast, when an element of a Criminal Code offense describes an accessory fact that accompanies the defendant's conduct, it is a circumstance element for which (again, unless different mental states are specified), the minimum culpable mental state is criminal negligence.

C.   *Statutory Interpretation of ORS 164.135(1)(a)*

With those principles in mind, we conclude that the text and context of ORS 164.135(1)(a), as well as the pertinent commentary to the Criminal Code, indicate that "without the consent of the owner" is part of the nature or essential character of the act proscribed by that statute. As noted, that statute provides that a person commits the crime of UUV when "[t]he person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat, or aircraft without the consent of the owner." The grammatical role of each of the phrases in that provision is telling. "The person" is the subject of the sentence, and "takes," "operates," "exercises," "rides," and "uses" are verbs describing bodily movements that the person makes. The phrase "[a]nother's vehicle, boat or aircraft" is the direct object of some of the listed verbs (takes, operates, uses), and it is the object of a prepositional phrase in the others (exercises control over and rides in). "Without the consent of the owner"

is an additional prepositional phrase (actually two prepositional phrases: "without the consent" and "of the owner"), regardless of which alternative verb applies. "Prepositions are words that show relationships." *Marcilionis v. Farmers Ins. Co.*, 318 Or 640, 645, 871 P2d 470 (1994). Prepositional phrases can be used as nouns, adverbs, or adjectives. *The Chicago Manual of Style* § 5.166, 188 (15th ed 2003). When used as adverbs, prepositional phrases are called adverbial phrases, and they modify verbs. *Id*.

Within the structure of ORS 164.135(1)(a), "without the consent of the owner" is an adverbial phrase, and it modifies the verb "rides" or one of the other verbs set out. That adverbial phrase describes how the person rides: without the owner's consent. In that way, the text describes a particular form of conduct, unauthorized use. If the legislature had meant to criminalize riding in another's vehicle, regardless of whether the actor knew that the owner did not consent, it could have described particular acts and then, in a series of separately numbered provisions, it could have described the circumstance elements attendant to those acts.[5] Even separating the owner's lack of consent from the verb in independent clauses arguably could have signaled a legislative intent to create an independent circumstance element. But, where, as in ORS 164.135(1)(A), the owner's lack of consent changes the meaning of "ride," the lack of consent is part of the nature or essential character of the proscribed act.

---

[5] An example of such a structure is found in ORS 163.415, describing the offense of sexual abuse in the third degree. That statute provides, in part:

"(1) A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"(A) The victim does not consent to the sexual contact; or

"(B) The victim is incapable of consent by reason of being under 18 years of age[.]"

In that provision, the proscribed act—subjecting another person to sexual contact—is set out in a separate paragraph from the element that the victim does not consent to the contact. Although it is not necessary to consider what mental state requirement attaches to the "does not consent" element of ORS 163.415 in this case, we note that the Court of Appeals has held that criminal negligence will suffice. *See State v. Wier*, 260 Or App 341, 354, 317 P3d 330 (2013) ("ORS 163.415 requires the state to prove that a defendant acted knowingly, recklessly, or with criminal negligence with respect to a victim's lack of consent[.]").

The state's contrasting interpretation would require proof only that a passenger was criminally negligent as to whether the owner of the vehicle in which he or she rode consented to the use. Under that interpretation, naive trust could subject a person to criminal liability for a felony. ORS 164.135(2). The severity of that consequence suggests that the legislature did not contemplate that mere criminal negligence would suffice to establish criminal liability for UUV.

That the crime of UUV criminalizes a particular form of conduct—unauthorized use—borders on the axiomatic. *See* Commentary to the Criminal Code § 134 at 142 ("This section covers the 'joy-riding' type of offense where the actor makes unauthorized use of another's vehicle but without the intent to steal it or permanently deprive the owner of its use."). The nature of joyriding is the temporary use of a vehicle without permission. Because riding without permission is part of the essential character of the proscribed act, to be convicted of UUV, a person must know that the vehicle is being used without the owner's consent.

D.   *Application*

As discussed, the state's evidence in this case showed that defendant rode as a passenger in his neighbor's vehicle while his brother drove. Defendant countered that evidence with his own evidence showing that his brother obtained permission from the neighbor to use the truck and that defendant did not know that they had used the truck beyond the neighbor's permission. Consistently with that evidence, defendant requested jury instructions that would have permitted a finding of guilt only if he "knew the use of the [vehicle] was without the consent of the owner," and he had "actual knowledge" that the owner had not consented to the use. Defendant also sought an instruction that "[w]hen used in the phrase '[defendant] knew the use of [the] vehicle was without the consent of the owner,' 'knowingly' or 'with knowledge' means that the person acts with an awareness that he had [actual] knowledge [of] the lack of consent of the owner."

The trial court declined to give defendant's requested instructions and, instead, instructed the jury that, for purposes of the "without consent" element, the state had to

prove only that defendant acted with criminal negligence as defined in ORS 161.085(10)—that is, that defendant had "failed to be aware of a substantial and unjustifiable risk that he did not have the consent of the owner." Because the state had to prove that defendant knew that the owner of the vehicle in which he rode did not consent to its use to convict defendant, the trial court erred by instructing the jury that criminal negligence was the applicable mental state for the offense. For the same reason, the trial court erred in failing to give defendant's requested instructions, which provided a correct statement of the law. *See Williams v. Philip Morris Inc.*, 344 Or 45, 55, 176 P3d 1255 (2008) ("Under Oregon law, there are two different types of error respecting jury instructions: (1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that were actually given.").

## III. CONCLUSION

To summarize: The nature, that is, the essential character, of the act of UUV proscribed by ORS 164.135(1)(a) is the use of a vehicle without the owner's consent. Lack of consent therefore is part of the conduct that the offense proscribes, and the minimum culpable mental state for that element is knowledge. Because the trial court failed to properly instruct the jury with respect to the culpable mental state required to convict defendant, we affirm the decision of the Court of Appeals, reverse the judgment of conviction, and remand to the circuit court for a new trial.[6]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[6] The state does not challenge the Court of Appeals' conclusion that the instructional error in this case was prejudicial and, therefore, reversible. Accordingly, we need not address that issue.