Argued and submitted October 1, 2019, affirmed July 15, 2020

DUANE KEITH BOSWELL,
*Petitioner-Appellant,*
*v.*
STATE OF OREGON,
*Defendant-Respondent.*

Sherman County Circuit Court
17CV23881; A167670

469 P3d 846

Petitioner, who was convicted at a bench trial of 11 different offenses related to a stolen truck, filed a petition for post-conviction relief alleging that his attorney had provided deficient representation under both the state and federal constitutions. He argued that his attorney had performed inadequately by failing to (1) introduce additional evidence to show the bias of a trial witness and (2) object to the trial court's purported application of an incorrect mental state. The post-conviction court denied his petition, concluding that the attorney's performance had not been deficient and that, in any event, petitioner had not been prejudiced by any of the alleged deficiencies. Defendant renews his arguments on appeal. *Held*: Petitioner is not entitled to post-conviction relief. Trial counsel performed adequately by presenting evidence of the antipathy between the witness and petitioner and calling the court's attention to the issue on several occasions. Moreover, even if counsel's performance had not been adequate, petitioner suffered no prejudice given that the trial court indicated during its speaking verdict that it had not believed most of what the witness had said. Similarly, counsel's failure to object to the court's comments regarding mental state was not deficient because, in context, it is not apparent that the trial court applied the incorrect mental state.

Affirmed.

Janet L. Stauffer, Judge.

Michael E. Rose argued the cause and filed the brief for appellant. Also on the brief was Creighton & Rose, PC.

Jonathan N. Schildt argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kamins, Judge.*

_____

* Kamins, J., *vice* Hadlock, J. pro tempore.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner, who was convicted of 11 offenses relating to a stolen truck, filed this post-conviction proceeding alleging that his attorney in the underlying prosecution provided constitutionally deficient representation in violation of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. After a trial, the post-conviction court denied the petition, concluding that petitioner had failed to meet his burden of proof. On appeal, petitioner challenges that conclusion, contending that trial counsel was inadequate in failing to (1) introduce evidence to show the bias of a trial witness and (2) object to the trial court's purported application of an incorrect mental state. For the reasons set out below, we affirm the judgment of the post-conviction court.[1]

In October of 2011, a repossession company arrived at a gas station owned by petitioner to repossess a 2004 Dodge truck whose owner had defaulted on payment. The company was tipped off as to the whereabouts of the vehicle by Alexander, a former friend of petitioner. The repossession agent located the truck, which fit the repossession order in all respects but one. When the agent opened the door to check the truck's Vehicle Identification Number (VIN), he discovered that the VIN matched a 2007 Dodge truck registered to petitioner, not the 2004 Dodge truck he was seeking. However, he could tell that the truck was, in fact, a 2004 model, located a 2004 owner's manual in the glove compartment, and also observed that the VIN sticker appeared to be a photocopy. As a result, he called the police and the truck was impounded pending an investigation.

The investigation revealed that petitioner had purchased a 2007 Dodge truck that had been totaled in a fatal car accident, and it was that truck's VIN number affixed to the impounded truck. In sworn statements to the insurance company, petitioner insisted that the impounded truck was, in fact, the totaled 2007 truck that he had purchased. He claimed that his friend Alexander had repaired and repainted it. The repossession agent could tell, however, that

---

[1] We reject the remaining assignments of error without discussion.

the impounded truck differed from the 2007 Dodge in significant respects, including the options, the color, the standard model-year changes, and the fact that it did not appear to have been totaled. He also observed that the impounded truck still had factory paint on it, meaning that it could not have been a repainted truck of a different color.

Before the investigation had even fully gotten underway, however, a key piece of evidence went missing. The same night the truck was impounded, it was stolen from the impound lot. Surveillance video footage revealed that the truck was taken at approximately 2:00 a.m. Cell phone tower records indicated that petitioner's cell phone had traveled from his home to the town where the lot was located at the same time as the footage showed the theft.

Petitioner was charged with five counts of unauthorized use of a vehicle (UUV), ORS 164.135: two counts for possessing the 2004 truck and three counts for taking it from the impound lot. He was also charged with several other offenses, including, as relevant here, possession of a stolen vehicle, ORS 819.300, and trafficking in stolen vehicles, ORS 819.310. Petitioner opted to proceed to a bench trial.

During the trial, petitioner's former friend Alexander testified in exchange for immunity. Alexander disputed petitioner's claim that he had repaired a totaled 2007 truck. Under Alexander's version of events, Alexander's daughter fell behind on payments of her 2004 truck and Alexander took possession of it under the promise to pay off the remaining balance. Alexander acknowledged that he had not kept that promise; instead, he and petitioner agreed to a deal: Alexander would sell the truck to petitioner who would then sell it for parts. Rather than chop and sell the truck, however, petitioner kept it and never paid Alexander.

The court convicted petitioner of all counts. During a speaking verdict, the court recognized that, while Alexander's testimony almost entirely lacked credibility, it was useful in establishing the actual ownership of the truck found on petitioner's lot. For the UUV counts, the court

noted that the state was required to prove that petitioner knew that the car was stolen, but later in the verdict stated that petitioner "should have known" that the car was stolen, which petitioner interprets to mean that the court applied an incorrect mental state standard akin to negligence.

Before the post-conviction court, petitioner contended that trial counsel was ineffective in failing to adduce evidence of the extent of Alexander's bias and to object to the trial court's application of an incorrect mental state. The post-conviction court rejected both claims, finding that trial counsel's performance was not deficient, and, even if it was, the errors would not have affected the outcome of the proceeding.

We review a post-conviction court's decision for legal error, and we are bound by the court's factual findings if there is evidence in the record to support them. *Alne v. Nooth*, 288 Or App 307, 308, 406 P3d 109 (2017). To demonstrate that he received inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner must prove two things, commonly referred to as the performance and prejudice prongs: (1) that trial counsel "failed to exercise reasonable professional skill and judgment" and (2) that "petitioner suffered prejudice as a result." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). To demonstrate ineffectiveness of counsel under the Sixth Amendment of the federal constitution, a petitioner must make a "functionally equivalent" showing, that: (1) "trial counsel's performance 'fell below an objective standard of reasonableness,'" and (2) that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 700 (quoting *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)).

Both of petitioner's claims of inadequacy of counsel arise from the content of the trial court's speaking verdict in the underlying prosecution. Petitioner's first assignment of error stems from trial counsel's failure to introduce extrinsic evidence of Alexander's bias to more thoroughly impeach his testimony. When delivering the verdict, the trial court stated:

"Alexander is really where the story starts. And, frankly, he's got more stories than the Brothers Grimm have fairy tales and some of them are almost that believable. That said, I do believe the truck in question was the '04 Dodge pickup that was owned by [Alexander's daughter]. And I'm basing that for what little value I can put on Mr. Alexander's testimony."

Petitioner contends that that language reveals that the trial court's ruling "hinged" on the testimony of the state's "star witness," Alexander. As a result, according to petitioner, any additional impeachment of that pivotal testimony was critical, including evidence that tended show the extent of how much Alexander disliked petitioner. The post-conviction court rejected that claim, noting that "any further impeachment of [Alexander] would have been cumulative. It was clear that the judge did not believe most of what Alexander said."

We agree with the post-conviction court that counsel's representation was not constitutionally deficient. As the trial court recognized, Alexander's testimony was of "little value" and had "more stories than the Brothers Grimm have fairy tales." Specific to the issue of bias, it was already apparent that Alexander held a grudge against petitioner. Alexander testified that he had sold the 2004 truck to petitioner so that petitioner would sell it for parts, but petitioner did not pay him and kept the truck for his own use. Alexander felt "cheated," motivating him to report the location of the truck to the lienholder.

Trial counsel further drew the court's attention to the antipathy between the two men by noting, in closing, that Alexander "wore out his welcome" with petitioner and a "distrust" developed between them. Although petitioner has identified additional evidence to demonstrate that Alexander truly disliked him, including the fact that Alexander reported petitioner to various government agencies, it was not unreasonable for trial counsel to conclude that Alexander was sufficiently impeached. The trial court was well aware of Alexander's shortcomings as a witness and, specifically, the fact that he had a grudge against petitioner. In short, we agree with the post-conviction court's conclusion that petitioner's trial counsel did not fail to

exercise reasonable skill and judgment in not introducing additional evidence of Alexander's bias against petitioner.

Furthermore, even if that were not the case, petitioner's claim also fails due to lack of prejudice. In other words, we are not persuaded that additional evidence of bias would have tended to affect the outcome of the case. Petitioner points to the trial court's statement that Alexander's testimony was the source of the court's conclusion that the "truck in question" is the "'04 Dodge pickup that was owned by [Alexander's daughter]." Although petitioner did not testify at trial, his sworn testimony to the insurance company was that the impounded truck was, in fact, the 2007 model consistent with the vehicle's VIN. Accordingly, petitioner contends, the fact that the trial court based its critical conclusion that the truck was the '04 Dodge pickup on Alexander's testimony indicates the import of his testimony.

In context, however, it is clear that the trial court relied on multiple sources of evidence to conclude that the "truck in question" was not a repaired and repainted 2007 model. Based on the evidence adduced at trial and recounted during the verdict (none of which came from Alexander), that conclusion was unavoidable—testimony at trial demonstrated that the truck in question did not possess any of the model year features of a 2007 truck but instead those of a 2004, and, indeed, a 2004 owner's manual was in the glove compartment. The truck still had factory paint, which was a different color than the 2007 truck. The truck had a different interior, different dashboard style, and an automatic transmission instead of a manual. Quite simply, Alexander's testimony was not the source of the court's conclusion that the truck found was not the 2007 truck registered to petitioner.

Given that context, the trial court's statement that Alexander's testimony provided the source for its conclusion that the truck in question was the " '04 Dodge pickup that was owned by [Alexander's daughter]'" likely refers to the court's conclusion that it was the same '04 truck *that belonged to Alexander's daughter*, not that it was an '04 truck in the first place. And that conclusion is not dependent on the content of Alexander's testimony.

It is undisputed that Alexander's daughter had purchased a 2004 Dodge truck that was the subject of a repossession order. The repossession order matched the truck on petitioner's property exactly. Petitioner acknowledged Alexander's involvement with a Dodge truck but disputed the nature of the involvement. Those facts alone—regardless of the content of Alexander's testimony—led to the conclusion that the 2004 truck on petitioner's property was the same 2004 truck owned by Alexander's daughter. *See State v. Connelly*, 298 Or App 217, 222, 445 P3d 940 (2019) ("The state may prove a defendant's knowledge with circumstantial evidence and reasonable inferences flowing from that evidence."). Accordingly, even if Alexander's testimony was a complete fabrication—which appears to be largely how the trial court viewed it—it still connected the "truck in question" to Alexander's daughter. Given that record, additional evidence of bias would not have had a tendency to affect the outcome of petitioner's trial.

Petitioner's second assignment of error—contending that counsel should have objected to the trial court's purported application of an incorrect mental state—is also derived from a portion of the trial court's speaking verdict. During the verdict, the trial court noted:

> "Like I say, I think it would've been apparent to [petitioner] that this wasn't the '07 rig; but it had the '07 VIN numbers, which indicates to me that he should've known if he didn't know, and probably did know, that there was an issue with this vehicle."

At the time of petitioner's conviction, a defendant was required to "know" that the vehicle was stolen to commit the crime of UUV. *State v. Simonov*, 358 Or 531, 540, 368 P3d 11 (2016). Accordingly, petitioner asserts that trial counsel was deficient in failing to object to the phrases "should've known" and "probably did know," which reflected the court's application of an incorrect mental state. The post-conviction court rejected that argument, reasoning that both the prosecutor and the defense attorney argued for the correct mental state, and, when considering the speaking verdict as a whole, it is apparent that the trial court was applying the appropriate standard. Again, we agree with the post-conviction court.

In context, it would not have been apparent to reasonable defense counsel that the trial court was applying an incorrect mental state. As an initial matter, the trial court framed the inquiry using the correct mental state, "[T]he question is: Did [petitioner] know that this was an '04 Dodge instead of an '07 Dodge? Did he know it was a vehicle that had issues as opposed to one that didn't?"

Moreover, in the same sentence the court used the phrases petitioner identifies as problematic, it also recognized that it "would've been apparent" to petitioner that it was a stolen truck. Generally, the mental state of "knowledge" requires that a defendant "acts with an awareness;" in this case, awareness that the vehicle was stolen. ORS 161.085(8). If it was "apparent" to petitioner that the truck was stolen, petitioner would have had such awareness.

Additionally, the subject of that portion of the speaking verdict was not limited to the UUV counts. That portion of the verdict also resolved Counts 6 and 7, possession of and trafficking in stolen vehicles, ORS 819.300, ORS 819.310. Those counts do not require that a defendant "know" that a vehicle is stolen, but rather require that defendant had "reason to believe."[2] Accordingly, it is not clear whether the language petitioner highlights applied to those counts, as opposed to the UUV counts.

During closing arguments, both parties also alerted the court to the correct mental state. Although neither argument was a model of clarity when separating out the applicable mental state for each count, defense counsel focused much of his argument on the lack of evidence that petitioner knew the truck was stolen. The first sentence of his closing stated that, for the UUV counts, the state had to prove that petitioner "committed the offenses knowingly." Counsel went on to question whether the state had proved that defendant knew that anyone other than the person from whom he

---

[2] Contrary to petitioner's contention that those counts also require the mental state of knowledge, the mental state for those crimes, as codified in ORS 819.300 and ORS 819.310 is "ha[ving] reason to believe." *See, e.g.*, *State v. Noe*, 242 Or App 530, 532, 256 P3d 166 (2011) (recognizing that UUV requires proof of a "knowing" mental state, while possession of a stolen vehicle "requires only that defendant commit the theft 'ha[ving] reason to believe that' the vehicle was stolen").

bought the 2007 truck owned the truck found on his lot. He next argued that the only evidence that defendant "knew" about the switched VINs came from the discredited testimony of Alexander. In rebuttal, the prosecutor responded to defense counsel's arguments "against the knowledge aspect" with the point that petitioner "switched the VINs. He knew it was stolen. If he didn't think it was stolen, why switch the VINs? You know, why take the VINs off a totaled rig and stick them on a perfectly good 2004?"

Given the context of the entirety of the speaking verdict and the parties' arguments, we cannot conclude that the trial court applied a legally incorrect mental state such that all reasonable counsel would have objected. Although some of the trial court's phrasing could have been more precise, we are not convinced that it reveals a fundamental misunderstanding of the law. *See, e.g., State v. Spieler*, 302 Or App 432, 441, 460 P3d 535 (2020) (recognizing that "even if the trial court's speaking verdict could have been more precise," the context does not prove that the court applied an incorrect mental state). Perhaps it would have been best practice for an attorney to confirm that the trial court continued to apply the correct mental state, but neither the state nor federal constitution requires best practice. *See Montez v. Czerniak*, 237 Or App 276, 307, 239 P3d 1023 (2010), *aff'd*, 355 Or 1, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) ("Even assuming that counsel's choices * * * were not, in hindsight, the best choices, that is not the test."). Given the context, including the trial court's accurate framing of the correct mental state, the presence of counts with a lesser mental state, and the arguments of the parties, we cannot conclude that all reasonable counsel would have objected to the trial court's statements. The post-conviction court correctly ruled that trial counsel was not constitutionally ineffective or inadequate in the manner alleged by petitioner.

Affirmed.