Argued and submitted June 18, 2014, reversed February 25, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELESIA KAY ENGLISH,
*Defendant-Appellant.*

Washington County Circuit Court
C120563CR; A153228

343 P3d 1286

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Preusch, Assistant Attorney General.

Before Duncan, Presiding Judge, and Flynn, Judge, and Edmonds, Senior Judge.*

---

* Flynn, J., *vice* Wollheim, S. J.

FLYNN, J.

**FLYNN, J.**

Defendant appeals from a judgment of conviction for two counts of first-degree criminal mistreatment under ORS 163.205(1)(b)(A). The conviction is based on two incidents in which a dog owned by defendant's live-in boyfriend bit defendant's daughter.[1] Defendant argues that the trial court erred in denying her motion for judgment of acquittal (MJOA) because the state proffered insufficient evidence to support the inference that she "intentionally or knowingly * * * cause[d] physical injury" to her daughter, as required for conviction under ORS 163.205(1)(b)(A). The state responds that a rational factfinder could infer from the dog's history of biting children that defendant knew that the dog had the "propensity to bite" and that this permits an inference that defendant violated the statute when she knowingly failed to keep her daughter away from the dog. We conclude that ORS 163.205(1)(b)(A) requires proof that a defendant knowingly engaged in assaultive conduct. Because the evidence does not permit this inference, we reverse.

We begin by describing the events giving rise to the conviction in the light most favorable to the state. *See, e.g.,* *State v. Turley,* 202 Or App 40, 48, 120 P3d 1229 (2005), *rev den,* 340 Or 157 (2006) (describing the standard by which we review the denial of an MJOA). Defendant lived in a small motor home with her boyfriend, her 10-year-old daughter (V) from a prior relationship, and the boyfriend's dog. The boyfriend's three-year-old son (E) from a prior relationship also stayed with them at times.

Both of the bite incidents upon which the conviction is based occurred during the summer of 2011.[2] In the first charged incident, V was petting the dog while it slept. After about five to 10 minutes, the dog woke up and bit V on the neck, leaving two bleeding puncture wounds. The wounds bled for at least 30 minutes and one left a scar. Defendant and her boyfriend were both asleep when the incident occurred.

---

[1] The boyfriend, Faill, was also charged and convicted of the same two counts after a consolidated bench trial. His appeal is pending before this court.

[2] The indictment alleges that both incidents occurred "between June 1, 2011 and August 31, 2011."

The second charged incident occurred as the dog and V rode together in the back seat of a car, with defendant and her boyfriend in the front. V was petting the dog when it suddenly turned and bit the right side of V's face, scratching her nose and cheek and splitting open her lip, which required three stitches to close. Defendant instructed V to lie to the doctor about how the injury occurred. Prior to those charged incidents and during that same summer, the dog also had bitten E on the face, requiring 12 stitches, after he apparently had provoked the dog, and bitten V once on the arm after she accidentally stepped on its tail.

Defendant was convicted following a trial to the court on two counts of first-degree criminal mistreatment under ORS 163.205(1)(b)(A)[3] after unsuccessfully moving for a judgment of acquittal. In opposing defendant's motion for judgment of acquittal, the state argued below: "[A]fter two bites, not one, but two bites and one being a very, very, very significant life scarring injury to—to a young child[, defendant] knows that [the] dog has a propensity to bite." The trial court agreed that this "knowledge" was sufficient for a conviction of first-degree criminal mistreatment, ORS 163.205(1)(b)(A), and denied defendant's motion. On appeal, defendant renews her argument that the state's evidence does not permit an inference that defendant "knowingly" caused the injuries to her daughter.

At the outset, we address defendant's argument that the charges of first-degree criminal mistreatment under ORS 163.205(1)(b)(A) required the state to prove that defendant "knowingly" caused the injuries to her daughter. As to those charges, the indictment alleges that defendant, "having assumed the permanent or temporary care, custody or responsibility for the supervision of [V], a dependent child, did unlawfully and knowingly cause physical injury or injury to the said victim." The pertinent portions of ORS 163.205 provide:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

---

[3] The court acquitted defendant on a third count alleging first-degree criminal mistreatment under ORS 163.205(1)(a), which prohibits "intentionally or knowingly withhold[ing] necessary and adequate food, physical care or medical attention * * *."

"* * * * *

"(b) The person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:

"(A) Causes physical injury or injuries to the dependent person or elderly person[.]"

In determining the meaning of the statute, we give primary weight to the text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). Here, the grammatical structure of ORS 163.205(1)(b)(A), which places the modifier "knowingly" immediately before the element "[c]auses physical injury[,]" supports defendant's argument that the mental state "knowingly" applies to the element "[c]auses physical injury[.]" Indeed, that is the meaning we drew from a nearly identical grammatical structure in *State v. Schodrow*, 187 Or App 224, 66 P3d 547 (2003). We held in *Schodrow* that the grammatical structure of ORS 166.250(1)(a), which makes it a crime to "knowingly: (a) Carr[y] any firearm concealed upon the person," left "no doubt that the prescribed culpable mental state—knowingly—attaches to that element" of "carrying any firearm[,]" and applies both to the act of "carrying" and to awareness that the object carried is a "firearm." *Id.* at 229-30; *see also State v. Christian*, 354 Or 22, 28, 307 P3d 429 (2013) ("A grammatical reading of the ordinance [restricting the carrying of firearms] is that 'recklessly,' an adverb, modifies the phrase that immediately follows it."); *Delgado v. Souders*, 334 Or 122, 132, 46 P3d 729 (2002) (in antistalking statute, placement of adverbs "intentionally," "knowingly," and "recklessly" immediately before the verb "engaged" demonstrated that the adverbs modified the verb). Here, too, the grammatical structure chosen by the legislature leaves no doubt that the mental state "knowingly" is intended to modify the element it precedes: "[c]auses physical injury or injuries[.]"

Our determination as to the meaning of the statute, however, does not fully address what the state must prove for a conviction under ORS 163.205(1)(b)(A). For that question, defendant points us to *State v. Barnes*, 329 Or 327, 986 P2d 1160 (1999), and to *State v. Jantzi*, 56 Or App 57, 641 P2d 62

(1982), *overruled on other grounds as recognized in State v. McNair*, 179 Or App 308, 315, 39 P3d 284 (2002). In *Barnes*, the Supreme Court examined what it means to "knowingly" cause injury in the context of the crime of second-degree assault, a statute that, similarly, requires that a defendant "'intentionally or knowingly cause[] *** physical injury[.]'" 329 Or at 330 (quoting ORS 163.175(1)(a)). The court emphasized that ORS 161.085(8) defines "[k]nowingly" as generally meaning that a person "acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists," without reference to awareness of a particular result. *Id.* at 337. Thus, the court concluded, to prove that a defendant knowingly caused serious physical injury, the state needed to prove that the defendant was "aware of the assaultive nature of his conduct" but not that he was aware that his conduct would cause serious physical injury. *Id.* at 338.

The state agrees that "knowingly" is defined as acting "with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). The state also agrees that, under *Barnes*, proving that a defendant knowingly caused serious physical injury means proving that the defendant was "aware of the assaultive nature of his conduct[.]" 329 Or at 338. The state, nevertheless, disputes defendant's contention that "[k]eeping a dog that has a history of biting children in proximity to a child is not an assaultive act[.]"

According to the state, it is an assaultive act because (1) "conduct" that can be engaged in "knowingly" includes both "an act or omission";[4] (2) an "omission" includes "failure to perform an act the performance of which is required by law";[5] and (3) "failure to perform" the "legal duty to provide care for a dependent" is "exactly what the criminal mistreatment statute is concerned with[.]"[6] "Given that," the state

---

[4] *See* ORS 161.085(4) ("'Conduct' means an act or omission and its accompanying mental state.").

[5] *See* ORS 161.085(3) ("'Omission' means a failure to perform an act the performance of which is required by law.").

[6] ORS 163.205(1)(b)(A) actually provides that a person commits the crime of criminal mistreatment in the first degree by intentionally or knowingly causing physical injury when the person either is "in violation of a legal duty to provide

reasons, "the trial court correctly concluded that defendant's awareness that her failure to remove a dangerous dog from the residence would cause physical injury to her dependent here could give rise to criminal liability."

Even if we accept the state's argument that defendant's omission ("failure to remove a dangerous dog") can constitute a knowingly assaultive act,[7] the evidence does not permit an inference that defendant knew her omission was of an "assaultive nature." *Barnes* does not illuminate what it means to know that one's conduct is of an "assaultive nature," because there was no basis for dispute that the conduct of the defendant in *Barnes*—punching a security officer in the eye—was assaultive in nature. *See* 329 Or at 329-30. Unlike the conduct in *Barnes*, defendant's conduct was not of a classically "assaultive nature"; rather than directly inflicting injury on V, defendant exposed V to the dog, an intervening actor, and the dog inflicted the injury.

We agree with defendant that *Jantzi* offers some guidance for analyzing this case. The defendant in *Jantzi* hid in the bushes holding a knife he had used to slash the victim's tires and, when the victim jumped on top of the defendant, they rolled over in such a way that the victim was stabbed in the abdomen. 56 Or App at 59. The trial judge, who was the factfinder, believed that the defendant did not intend to stab the victim but reasoned that the defendant, nonetheless, "knowingly" caused the injury—as required for charge of second degree assault—because he knew he had a dangerous weapon and that a confrontation was going to occur. *Id.* at 61. We held that the court's findings did not permit conviction for a "knowing" assault, because "a person who 'is aware of and consciously disregards a substantial and unjustifiable risk' that an injury will occur acts

---

care for a dependent person or elderly person, *or [has] assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person[.]"* (Emphasis added.) Indeed, the indictment charged defendant with violating ORS 163.205 on the basis of "having assumed the permanent or temporary care, custody or responsibility for the supervision of [V], a dependent child," without mentioning any violation of legal duty.

[7] *But see State v. Branam*, 86 Or App 382, 385, 739 P3d 606 (1987) (reciting that a conviction for criminal mistreatment in the first degree under ORS 163.205(1)(b) can never be based on a "mere failure to act, without more").

'recklessly,' not 'knowingly[,]'" as those mental states are defined in ORS 161.085. *Id.*

Defendant argues that, as in *Jantzi*, the evidence establishes at most that, in failing to remove the dog from the residence, she "'recklessly,' not 'knowingly'" caused the injuries to V. Because the second charged incident presents the closer question, we start by considering the evidence of defendant's knowledge at the time of that incident in the light most favorable to the state. *See Turley*, 202 Or App at 48. By the time defendant allowed the dog to ride with V in the back seat of the car, defendant knew that the dog had bitten three-year-old E on the face so severely that he received 12 stitches. She also knew that the dog had twice bitten V: once on the arm after she accidentally stepped on his tail and once on the neck when she petted him while he was sleeping. Defendant knew that the first bite to V caused bruising and that the second bite caused two puncture wounds that bled for at least 30 minutes. She also believed that V should not have unsupervised contact with the dog, but she ignored those rules, in part—the state acknowledges—because V "liked [the dog] and was not scared of him[.]" Finally, the state argues that defendant's instruction to V to lie about how she hurt her face is additional evidence that defendant "knowingly" caused the injury.

We respectfully disagree with the trial court's conclusion that the evidence permits a finding defendant knowingly caused the injuries to V. Even if the state were correct that the evidence permits an inference that "defendant *knew* that [the dog] would bite [V] again[,]" (emphasis added), the inference describes at most a kind of awareness of unjustified risk that, as *Jantzi* emphasizes, establishes a "reckless" mental state. 56 Or App at 61. To prove that defendant *knew* her conduct was assaultive, the state would have needed evidence that defendant knowingly used the dog to engage in assaultive conduct. For example, in *State v. Martin*, 240 Or App 357, 246 P3d 506, *rev den*, 350 Or 530 (2011), the defendant was convicted of second-degree assault after he commanded his dog to attack two victims in his yard. We held that evidence of a recent incident in which the dog had also attacked on the defendant's command was relevant to prove that the defendant knew his command would cause the dog

to attack. *Id.* at 361. *Martin* illustrates the type of scienter necessary to constitute a "knowing" assault.

Nothing about the history of the dog here—a bite to a three-year-old, a bite to V when she stepped on the dog's tail, and a bite to V when she was alone with the dog and disturbed his sleep—permits an inference that defendant knowingly engaged in assaultive conduct or acted with an awareness that she was assaulting when she allowed the dog and V to ride together in the car.[8] Nor does defendant's desire to conceal the circumstances of the bite suggest an admission that she knew beforehand that her conduct was assaultive, rather than a fear of the many adverse consequences that could be expected to follow regardless of whether defendant acted knowingly. We in no way minimize or excuse defendant's conduct. As we have emphasized, the evidence may permit an inference that defendant committed a crime involving a reckless mental state. The indictment, however, charges defendant with a crime that requires proof that she "knowingly" engaged in assaultive conduct. The evidence is insufficient to show that defendant knowingly caused V's injuries on either charged occasion, and the conviction must be reversed.[9]

Reversed.

---

[8] In terms of the degree of risk posed by the dog, we note that it continued to live with the family for many months—apparently without incident—before V reported the bites to school officials.

[9] The state does not ask us to modify the conviction to a conviction for a lesser-included offense, and, in any event, we cannot identify the necessary elements of a lesser-included offense expressly pleaded in the accusatory instrument. *See State v. Zimmerman*, 170 Or App 329, 332, 12 P3d 996 (2000) (holding that "[a] crime is a lesser included offense of another crime if either of two circumstances exist: (1) the elements of the lesser offense necessarily are included in the greater offense, or (2) all of the elements of the lesser offense are expressly set forth in the accusatory instrument") (citing *State v. Cook*, 163 Or App 578, 581, 989 P2d 474 (1999)).