Argued and submitted October 28, 2015, reversed and remanded April 26, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DAVID ROY WIBORG,**
*Defendant-Appellant.*

Union County Circuit Court
M19635, M19663;
A156084 (Control), A156085

396 P3d 258

Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge pro tempore.

## FLYNN, J. pro tempore

In this consolidated criminal case, defendant appeals from judgments of conviction for improper use of the emergency communications system, ORS 165.570.[1] His convictions arise from two incidents in which defendant called 9-1-1 to report his belief that prowlers had entered his property. On appeal, the dispute turns on how to construe the culpable mental state requirement of ORS 165.570, which makes it a crime for a person to "knowingly" make an emergency call "for a purpose other than to report a situation that the person reasonably believes requires prompt service in order to preserve human life or property." The trial court, sitting as factfinder, construed the statute to require only proof that the person knowingly made an emergency call while lacking an objectively reasonable belief in the need for emergency services, and the court found defendant guilty under that formulation. Defendant argues that ORS 165.570 requires proof that he knew that his purpose in calling emergency services was other than to report a reasonable belief in the need for emergency services. We agree that ORS 165.570 requires proof that the caller knew that he or she was calling for a prohibited purpose.

Defendant argues that he was entitled to judgments of acquittal under a correct construction of the statute, because the responding officers agreed that defendant genuinely believed that prowlers had entered his property. Alternatively, defendant argues that the court erred in convicting him without considering whether he knew that he was calling for other than a proper purpose.[2] We conclude that there is evidence from which the court could find that defendant knew he was calling for a prohibited purpose but that the trial court applied an incorrect legal standard with regard to that element of the offense and, thus, did not make

---

[1] Defendant was convicted in two separate cases of a total of three counts of improper use of an emergency reporting system. Those cases have been consolidated on appeal.

[2] When the trial court, in a bench trial, rules that the state is not required to prove a particular element of the charged offense, our review of that ruling is analogous to our review of a ruling regarding the elements to be listed in a jury instruction. *State v. Barboe*, 253 Or App 367, 373, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013).

a finding on an element necessary to convict. Therefore, we reverse and remand for a new trial.

## I.  BACKGROUND

The events leading to defendant's first arrest began with defendant placing a call to 9-1-1 to report prowlers on his property. Two police officers responded to the call and searched the property, but they found no evidence of prowlers. They assured defendant that there were no prowlers and told him not to call 9-1-1 again. However, later that night, defendant made four more calls to 9-1-1. Three were inaudible, and in a fourth, defendant again reported that there were prowlers on his property. Officers again responded and searched the area but, again, could not find evidence of prowlers. When they explained this to defendant, the officers observed that defendant seemed paranoid, was sweating profusely, and could not stand still. They concluded that he was intoxicated. When defendant started complaining that there were people behind him, the officers handcuffed him and took him to jail. Based on those events, defendant was charged with violating ORS 165.570.

One month later, defendant called 9-1-1 to report that he could hear people walking on his roof and in his attic. Officers responded but could not find prowlers and noted that defendant's mobile home did not have an attic. Later that evening, defendant called 9-1-1 again to report a "spiritual emergency." Officers responded and assured defendant that there were no people on his roof or property. They asked defendant to go to the police station to meet with a mental health professional, but he refused. The officers warned defendant that he would be arrested if he called 9-1-1 again. Defendant called 9-1-1 a third time that night, and the officers arrested him. Defendant was again charged with violating ORS 165.570.

Defendant tried both cases to the court in a consolidated bench trial. He offered evidence that, on both nights, he actually believed—even if unreasonably—that he was reporting a situation that required emergency services. He argued that he was entitled to be acquitted of the charges under ORS 165.570 because the state did not prove that defendant knew he was calling for a purpose

other than to report a situation that he reasonably believed required emergency services. The court rejected defendant's construction of the statute. The court found that defendant knowingly placed the calls to emergency services and that defendant lacked an objectively reasonable belief in the need for those services. On the basis of those findings, the court found defendant guilty on all counts.

## II. ANALYSIS

On appeal, defendant renews his argument that he could be convicted of violating ORS 165.570 only if he knew that he was calling for a purpose other than to report a situation that he reasonably believed required emergency services. The statute provides, in pertinent part:

"(1)   A person commits the crime of improper use of the emergency communications system if the person *knowingly*:

"(a)   Makes an emergency call *** for a purpose other than to report a situation that the person reasonably believes requires prompt service in order to preserve human life or property; or

"(b)   Allows another person [to do the same]."

(Emphasis added.)

"Knowingly" is one of four culpable mental states that the legislature defined when it enacted the Criminal Code in 1971. ORS 161.085(6) ("'Culpable mental state' means intentionally, knowingly, recklessly or with criminal negligence[.]"). As defined by the legislature, a person acts "knowingly" when the person "acts with an awareness that [his or her conduct] is of a nature so described or that a circumstance so described exists." ORS 161.085(8). Although the statutory definition does not expressly apply to ORS 165.570, the Supreme Court has attributed that same meaning to "knowingly" as used in ORS 165.570. *In re Strickland*, 339 Or 595, 601, 124 P3d 1225 (2005).

Relying on *Strickland*, defendant argues that the term "knowingly" in the introductory paragraph of ORS 165.570(1) means that the state must prove that the person called 9-1-1 with an awareness that his purpose is other than the proper purpose—reporting a situation that the

person reasonably believes requires emergency services. The state argues, however, that the legislature's use of the phrase "reasonably believes" to describe the actor's purpose means that ORS 165.570(1) criminalizes any call that is knowingly made to 9-1-1 if a determination is later made that the person called without a reasonable belief in the need for emergency services, and the dissent agrees. Thus, the issue for this court to resolve is whether the legislature intended that no culpable mental state applies to the "purpose" element of ORS 165.570(1). The Supreme Court has provided an analytical framework to guide our analysis of that question. *See State v. Simonov*, 358 Or 531, 537, 368 P3d 11 (2016); *State v. Rainoldi*, 351 Or 486, 491, 268 P3d 568 (2011).

A. *Is the Offense Part of the Oregon Criminal Code?*

The first step in the Supreme Court's analytical framework is to determine whether the statute that defines the offense falls inside or outside of the Oregon Criminal Code. *Simonov*, 358 Or at 537; *Rainoldi*, 351 Or at 491. The legislature has specified that, in general, proof of guilt requires proof of "a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2). However, if an offense is "'defined by a statute outside the Oregon Criminal Code,'" and if the statute "'clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof,'" then no culpable mental state is required for the offense, or for the element at issue. *Rainoldi*, 351 Or at 490-91 (quoting ORS 161.105(1)(b)). Here, we readily conclude that ORS 165.570 falls outside of the Oregon Criminal Code. *See* ORS 161.005 (expressly listing the code provisions that "may be cited as Oregon Criminal Code of 1971").

B. *Does the Statute Clearly Indicate an Intent to Dispense with a Culpable Mental State?*

Because ORS 165.570 falls outside of the Oregon Criminal Code, the next question is whether the statute "'clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense *or for any material element thereof.*'" *Rainoldi*, 351 Or at 491

(quoting ORS 161.105(1)(b) (emphasis added)). In the offense of improper use of the emergency communications system, the purpose for which the person makes the call is a material element. *See Simonov*, 358 Or at 537 (explaining that "[a]n element is 'material' unless it relates solely to the statute of limitations, jurisdiction, venue or similar matters" (internal quotation marks omitted)). Thus, we must consider whether ORS 165.570(1) "clearly indicates a legislative intent to dispense with" a culpable mental state regarding the purpose for which the person calls 9-1-1. *See Rainoldi*, 351 Or at 491.

The Supreme Court has identified a nonexhaustive list of factors for a court to consider in making that determination, the first of which is the text of the statute. *Rainoldi*, 351 Or at 492-95. Here, the text is dispositive, because the statutory language and the Supreme Court's prior construction of that language preclude a determination that ORS 165.570(1) "clearly indicates a legislative intent to dispense with" a culpable mental state regarding the purpose for which the person calls 9-1-1. We begin by observing that the grammatical structure of ORS 165.570 offers helpful clues to the statute's meaning. *See State v. English*, 269 Or App 395, 399, 343 P3d 1286 (2015) (relying on the "grammatical structure" of the statute in dispute). First, the term "knowingly" is an adverb that serves to modify the phrase to which it applies. *See State v. Christian*, 354 Or 22, 28, 307 P3d 429 (2013) (explaining that adverb "recklessly" served to modify "the phrase that immediately follows it"). Moreover, the mental state "knowingly" is separated by a colon from two different subsections to which it applies. That structure leaves no doubt that "knowingly" is intended to modify both subsections that follow. *See English*, 269 Or App at 399 (concluding that the structure of the statute left "no doubt that the mental state 'knowingly' is intended to modify the element it precedes"); *State v. Schodrow*, 187 Or App 224, 229, 66 P3d 547 (2003) (concluding that "there is no doubt that the prescribed culpable mental state" attaches to the element immediately following it).

We recognize that those observations fail to resolve whether the legislature intended that "knowingly" modify the entire phrase that follows it or, as the state and the dissent

argue, "clearly indicat[ed]" that "knowingly" modifies only the verb "call." However, we have described a similar statutory structure as creating an ambiguity that "is a classic one described in hornbook law: * * * 'As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel[.]'" *Id.* at 229-30 (quoting Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 27, 193 (hornbook series 1972)).[3] The structure of ORS 165.570(1) suffers from the same classic ambiguity. Although the state and the dissent would have us conclude that the legislature's use of the phrase "reasonably believes," in the sentence following the adverb "knowingly," overcomes the classically ambiguous statutory structure by clearly indicating a legislative intent to dispense with any mental state regarding the person's purpose in making a 9-1-1 call, we reject that construction for several reasons.

The primary reason for rejecting the statutory construction that the state and the dissent urge is that the construction is inconsistent with the Supreme Court's construction of the statute in *Strickland*. In *Strickland*, the court addressed the culpable mental state required for a conviction under ORS 165.570, in the course of reviewing a State Bar disciplinary decision. 339 Or at 597. The accused in *Strickland* had been convicted of violating ORS 165.570, among other offenses, after he called 9-1-1 and falsely reported that construction vehicles had surrounded his car and that he was being threatened. *Id.* at 598-99. He argued that his conviction did not constitute a violation of bar disciplinary rules because there was no rational connection between the act and the lawyer's fitness to practice law. *Id.* at 600. The court disagreed and identified several ways in which the conviction bore a "rational connection" to the lawyer's fitness to practice law, including "the extent to which the act demonstrates disrespect for the law or law enforcement." *Id.* at 601.

---

[3] The statute at issue in *Schodrow* provided that,

"'(1) [A] person commits the crime of unlawful possession of a firearm if the person knowingly:

"'(a) Carries any firearm concealed upon the person[.]'"

187 Or App at 229 (quoting ORS 166.250(1) (brackets in *Schodrow*)).

In explaining that rational connection, the court emphasized:

"A criminal defendant acts 'knowingly' when he 'acts with an awareness that [his conduct] is of a nature so described or that a circumstance so described exists.' ORS 161.085(8). In other words, the accused's conviction demonstrates, at a minimum, that the accused understood that he was using the 9-1-1 system to report activities that he did not reasonably believe required prompt emergency service 'in order to preserve life or property.' ORS 165.570(1)."

*Id.* at 601 (brackets in original). Although the dissent identifies factual differences in an attempt to distinguish *Strickland*,[4] the significance of *Strickland* is the court's conclusion that a conviction under ORS 165.570(1) requires proof that the person "understood that he was using the 9-1-1 system to report activities that he did not reasonably believe required prompt emergency service 'in order to preserve life or property.'" That conclusion was a primary basis for the court's holding that a "rational connection" existed between the accused's conviction and his fitness to practice law. *Strickland* binds this court, and it precludes us from accepting the state's contention that the legislature "clearly" intended to dispense with any culpable mental state regarding the person's reason for calling 9-1-1. *Id.* at 601-02.

Moreover, *Strickland*'s construction of the statute holds up to a more rigorous examination. First, as defendant emphasizes, the ordinary meaning of the term "purpose" is "something that one sets before himself as an object to be attained : an end or aim to be kept in view in any plan, measure, exertion, or operation" and "an object, effect, or result aimed at, intended, or attained." *Webster's Third New Int'l Dictionary* 1847 (unabridged ed 2002). It is difficult to reconcile the legislature's choice of a term that connotes a conscious mental objective with an intent to make the person's mental state irrelevant.

In addition, construing ORS 165.570(1) in the context of the meaning of the term "knowingly," the exercise in which the court engaged in *Strickland*, leads to *Strickland*'s conclusion that the legislature required proof that the person

---

[4] The state's brief makes no attempt to distinguish *Strickland*.

"understood" (knew) that he or she was calling 9-1-1 for an improper purpose. As *Strickland* reasons, the long-established definition of "knowingly"—the culpable mental state that the legislature chose for ORS 165.570(1)—means that the person "acts with an awareness that [his conduct] is of a nature so described or that a circumstance so described exists." 399 Or at 601 (quoting ORS 161.085(8) (brackets in *Strickland*)).

As pertinent to ORS 165.570(1), the prohibited act is not simply making a call to 9-1-1, but making a call to 9-1-1 "for a purpose other than to report a situation that the person reasonably believes requires prompt service in order to preserve human life or property." Whether we consider the qualifier "for a [prohibited] purpose" to be the nature of an unlawful call or a circumstance that makes the call unlawful, the mental state "knowingly" means the person must call "with an awareness that" the call is of the nature that makes it unlawful, or that the circumstances exist that make the call unlawful. Thus, a requirement that the caller act "knowingly" is inconsistent with an intent to allow convictions when the caller has no awareness that the call is for a prohibited purpose. For all of the reasons discussed above, ORS 165.570(1) does not clearly indicate a legislative intent to dispense with a culpable mental state regarding the caller's purpose in making the call.

C.  *Determining Whether "Knowingly" Applies to the Purpose of the Call*

Our determination that the legislature did not clearly indicate the intent to dispense with a culpable mental state regarding the purpose of the call means that we must determine what mental state applies to that element. *See Rainoldi*, 351 Or at 491. Here, too, *Strickland* and the language of the statute resolve our inquiry. Having concluded that the legislature did not dispense with a culpable mental state regarding the purpose of the call, the most likely candidate for the intended mental state is "knowingly," because that is the only mental state listed in ORS 165.570(1). *Strickland* confirms that construction: to prove a violation of ORS 165.570(1), the state must prove that the defendant "understood that he was using the 9-1-1 system to

report activities that he did not reasonably believe required prompt emergency service 'in order to preserve life or property.'" 339 Or at 601 (quoting ORS 165.570(1)).

D. *The Proper Remedy*

Given our construction of ORS 165.570(1), we conclude that the trial court erred in requiring the state to prove only that defendant knowingly called emergency services while lacking a reasonable belief in the need for those services. As indicated at the outset, defendant argues both that the trial court erred in applying an incorrect construction of the statute to find him guilty and that he was entitled to judgments of acquittal under a correct construction of the statute. On this record, however, there is evidence from which a factfinder could infer that defendant knew he was calling for a purpose other than to report a reasonable belief in the existence of prowlers around his house and, thus, there is evidence sufficient to withstand a motion for judgment of acquittal. The trial court's error lay in convicting defendant without deciding a material element and the proper disposition given that error is to reverse and remand for a new trial, rather than to reverse outright. *See Schodrow*, 187 Or App at 232.

Reversed and remanded.

**DeVORE, J.,** dissenting.

The majority opinion has one of two meanings, and both may be flawed. One meaning erases an essential word from the statute, and the other meaning makes the statute a contradiction in terms. Because I fear that neither meaning may properly construe ORS 165.570(1)(a), I reluctantly dissent.

One reading of the majority opinion may be that a defendant cannot be convicted of the crime of improper use of an emergency communication system if the person knowingly makes an emergency call for the purpose of reporting a situation that the person believes is an emergency, no matter how wildly unreasonable that belief may be. *State v. Wiborg*, 285 Or App 131, 133, 139, 141, 396 P3d 258 (2017). That is because the majority concludes that the trial court

erred in finding defendant guilty without a finding that *he* knew his belief was unreasonable. *Id.*

That conclusion departs subtly but significantly from the statute. In relevant part, ORS 165.570(1) provides:

> "A person commits the crime of improper use of the emergency communications system if the person knowingly:
>
> "(a)   Makes an emergency call * * * for a purpose other than to report a situation that the person *reasonably believes* requires prompt service in order to preserve human life or property[.]"

(Emphasis added.) The majority opinion could reach the same conclusion that it reaches if the word "reasonably" were deleted from the statute. The same conclusion would be reached if the statute provided that a person commits the crime "if the person knowingly makes an emergency call * * * for a purpose other than to report a situation that the person [~~reasonably~~] believes" is an emergency. In this case, defendant called repeatedly about imagined prowlers. Despite being told that there were no prowlers and despite being warned not to call again, he demonstrated that he did not accept what he was told, and so he called yet again. Thus, the majority's conclusion may mean that he cannot be convicted so long as he subjectively believes that his call involves an emergency. Insofar as he "knows," the situation *is* an emergency. In effect, the majority's decision omits the word "reasonably" from the statute.

One explanation for that problem in the majority opinion may be that the statute involves more than just the question whether it does or does not include proof of a culpable mental state. To be sure, it does. The statute expressly requires that, to be found to violate the statute, a person must act "knowingly." ORS 165.570(1). But the issue is not just "how far down the sentence the word 'knowingly' is intended to travel." *Wiborg,* 285 Or App at 138. The phrase *"reasonably* believes" introduces another consideration—a consideration that demands that the factfinder consider more than just what the defendant subjectively believes. That added consideration—*reasonable* belief—should be impossible to overlook.

The phrase "reasonable belief" is a well-established term of legal meaning that is familiar in many settings. For example, an officer's stop of a person must be justified by reasonable suspicion of criminal activity. The standard has subjective and objective components. An officer must subjectively suspect that the person stopped is involved in criminal activity and that belief must be objectively reasonable under the totality of the circumstances. *State v. Mitchele*, 240 Or App 86, 90-91, 251 P3d 760 (2010). Similarly, to have probable cause to arrest, an officer must subjectively believe that a crime has been committed and that belief must be objectively reasonable in the circumstances. *State v. Pollock*, 337 Or 618, 622-23, 102 P3d 684 (2004). In a civil claim for wrongful civil proceedings, one element required is an absence of probable cause for an underlying proceeding. To have probable cause means that the person "'reasonably believes' that he or she has a good chance of prevailing—that is, he or she subjectively has that belief and the belief is objectively reasonable." *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 238, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). The best expression of this common concept is found in the Oregon Rules of Professional Conduct (ORPC), which governs lawyers. It provides this definition:

> "'Reasonable belief' or 'reasonably believes' when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable."

ORPC 1.0(l). The recurring use of the term "reasonable belief" through many fields of Oregon law confirms that, when the legislature chose those words to describe the offense of misuse of the 9-1-1 system, the legislature chose familiar words with specific legal meaning. To choose words with a well-understood meaning is the best way to express legislative intent. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.)).

In this instance, the legislature chose the words, "reasonably believes," in order to require both subjective

and objective components when speaking of the defendant's belief. To recap, a person commits the offense if the person knowingly makes an emergency call for a purpose other than to report a situation that the person *reasonably* believes is an emergency. ORS 165.570. The subjective alternative is that the person commits the offense if the person knowingly calls to report a situation that the person does not personally or subjectively believe is an emergency. The objective alternative is that the person commits the offense if the person knowingly calls to report a situation that could not appear to be an emergency, given what a reasonable person in defendant's circumstances would believe. *See, e.g.,* ORS 124.100(5) (a defendant is liable "for permitting another person to engage in physical or financial abuse [of a vulnerable person] if the [defendant] *knowingly* acts or fails to act under circumstances in which *a reasonable person should have known* of the physical or financial abuse" (emphasis added)); *Wyers v. American Medical Response Northwest, Inc.,* 268 Or App 232, 246-47, 342 P3d 129 (2014), *aff'd,* 360 Or 211, 377 P3d 570 (2016) (ORS 124.100(5) does not require a plaintiff to prove that a defendant subjectively knew that the offender was engaged in misconduct with a vulnerable person at the time of the conduct; rather, "the legislature's use of *'reasonable person'* nomenclature demonstrates that it intended to impute knowledge of the abuse to a defendant under an objective standard" (emphasis added)).

To the extent that the majority opinion produces a result that a defendant cannot be convicted whenever the defendant believes the call is an emergency, even when all the circumstances known to a reasonable person indicate that the situation is not an emergency, then the majority opinion has omitted the word "reasonable" from the well-understood term "reasonable belief." If so, then we violate legislative intent and a basic rule of interpretation. *See* ORS 174.010 (a court cannot omit words in a statute); *Gaines,* 346 Or at 171 (best expression of intent are the statute's words).

The alternate reading of the majority opinion is a reading that makes the statute a contradiction in terms. That unhappy conclusion is the result of the attempt to reconcile the term "knowingly" with the term "reasonably," when doing so without appreciating that "reasonably

believe" is a term of legal meaning with an objective component. The majority reads together "knowingly" and "reasonably believes" and, by conflating the terms, fails to recognize reference to an objective consideration. *See Wyers*, 360 Or at 221-30 (rejecting defendant's interpretation of ORS 124.100(5)). In the majority's view, the statute requires the state to prove that defendant knew that his belief was unreasonable. *Wiborg*, 285 Or App at 133, 140-41.

The trouble with that interpretation is that a person who subjectively believes that a situation is an emergency, when it is not actually an emergency, cannot be proven to "know" that his or her belief is unreasonable. Defendant demonstrated that problem, when being told repeatedly on different days, after police inspection, that there were no prowlers on his property. Yet, he called again. To "know" a circumstance is much the same as to "believe" a circumstance exists.[1] Accordingly, the majority opinion can be read to require the state to prove that, although defendant *believed* the situation was an emergency, he actually *knew* that it was not. For all practical purposes, that is a contradiction in terms.

After the decision in this case, the statute remains enforceable in one or two situations—one that is narrow and one that is implausible. In one, the statute may be enforced against a person who never believed at all that the situation was an emergency. In that case, the term "reasonably" is unnecessary and has been rendered surplusage. That is an interpretation to be avoided. *See Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (rejecting construction that would relegate portion of statute to surplusage). In the other situation, the statute may be enforced against a person who had a genuine belief that the situation was an emergency when it was not an emergency, if, but only if, the state can prove that the person, simultaneously and paradoxically, had "knowledge" that the belief

---

[1] ORS 161.085(8) explains:

"'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

was unreasonable. That situation presents a contradiction in terms, if not an impossibility of proof.

Despite the majority's reference to an opinion of the Supreme Court, I am unpersuaded. Our issue of statutory construction was not presented for decision in that case, *In re Strickland*, 339 Or 595, 124 P3d 1225 (2005). Among other things, that case involved a question whether a lawyer committed criminal acts that reflected adversely on the lawyer's honesty, trustworthiness, or fitness to practice law for purposes of the Oregon Code of Professional Responsibility Discipline Rule (DR) 1-102(A)(2) (providing that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law). *Id.* at 601. One of the underlying convictions, among others, did involve abuse of the 9-1-1 system, ORS 165.570(1). *Id.* at 597. Due to the facts of that case, however, the court was not called upon to decide whether the term "reasonably believes" involves both objective and subjective components. That is because the facts were extreme.

The subject lawyer had called 9-1-1 in a deliberately faked emergency. Muddying the water, he admitted that he had violated another statute, ORS 162.375, which meant knowingly making a false report, and which did not involve the term "reasonably believes." For purposes of the disciplinary rule, the court referred to the lawyer's conduct as "a pattern of criminal conduct" because there were multiple charges. *Id.* at 601. The situation happened to be the narrow one, noted above, in which a person abused the 9-1-1 system, ORS 165.570, because the person actually knew that there was no emergency. The court's recitation that "he did not reasonably believe" the situation was an emergency reflected those extreme facts. *Id.* Under any interpretation, a defendant who did not subjectively believe the situation was an emergency would violate the statute. The decision is controlling insofar as such conduct, on those facts, reflects on the lawyer's honesty, trustworthiness, or fitness to practice under DR 1-102(A)(2). But, the case did not present, nor squarely address, the question that arises when a caller believes the situation is an emergency but, under the circumstances, the caller reasonably should not believe it is

an emergency. Because our question was not presented or debated, *Strickland* is not controlling.

Whatever the proper meaning of the statute, this case reflects the difficulty of using the criminal justice system in dealing with mental illness. Such cases call for the exercise of prosecutorial discretion when choosing which cases to bring and which cases to leave for social services. When the criminal justice system is invoked, as here, there may be a more appropriate response than our reconstruction of the statute. If a person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law, then that defense should be interposed to criminal liability. *See* ORS 161.295 (mental disease or defect; guilty except for insanity). Similarly, evidence of a mental illness is admissible when relevant to a culpable mental state (here, "knowingly"). *See* ORS 161.300 (mental disease or defect admissible if relevant to the intent that is an element of a crime). To construe this statute more narrowly than the legislature intended is compassionate, but it may be a case of bad facts making bad law, when an appropriate defense may be a better answer.

In the end, this is an argument I am happy to lose. Nevertheless, out of concern for this statute, I respectfully dissent.