Submitted September 2, affirmed September 29, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HANS GUENTER WULF,
*Defendant-Appellant.*

### Washington County Circuit Court
### 19CR58623; A173165

500 P3d 754

Petitioner appeals a judgment of conviction for driving while suspended, ORS 811.182. He assigns error to the trial court's denial of his motion to suppress evidence that his license was suspended, contending that the evidence was obtained during an unlawful traffic stop for a U-turn. In defendant's view, his U-turn in an intersection did not violate ORS 811.365(1)(a), which regulates U-turns in intersections, meaning that there was no probable cause to stop him for it. Petitioner argues that ORS 811.365(1)(a) only prohibits U-turns from the portions of an intersection that are controlled by an electrical signal, and that he turned from a lane not controlled by the signal. The state argues U-turns are prohibited at any point within a signal-controlled intersection. *Held*: Correctly construed, ORS 811.365(1)(a) prohibits U-turns in any intersection with an electrical traffic control signal, unless "posted otherwise," which was not the case here. The traffic stop was legal, and the trial court did not err when it denied defendant's motion to suppress evidence that resulted from the stop.

Affirmed.

Patricia Crain, Senior Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Petitioner appeals a judgment of conviction for driving while suspended, ORS 811.182. He assigns error to the trial court's denial of his motion to suppress the evidence that his license was suspended, contending that the evidence was obtained during an allegedly unlawful traffic stop for a U-turn. In defendant's view, his U-turn in an intersection did not violate ORS 811.365(1)(a), which regulates U-turns in intersections, meaning that there was no probable cause to stop him for it. We conclude otherwise and affirm.

To give legal context to the facts about defendant's U-turn, we start by setting out ORS 811.365(1)(a), the statutory restriction on U-turns in intersections. It states:

"A person commits the offense of making an illegal U-turn if the person is operating a vehicle and the person turns the vehicle so as to proceed in the opposite direction in any of the following places:

"(a)  Within an intersection where traffic is controlled by an electrical signal. This paragraph does not apply where posted otherwise."

Next, we describe the facts of defendant's U-turn, which are not in dispute. Defendant made his U-turn in the intersection of 185th Avenue and Stepping Stone Drive in Beaverton, a location illustrated by the photographs defendant submitted in support of his motion to suppress, which we have reproduced in an appendix to this opinion.[1] He had been driving north on 185th and made the U-turn so that he could proceed south. As northbound 185th approaches its intersection with Stepping Stone Drive, 185th has two lanes, both of which must proceed straight through the

_____

[1] We recognize that the ensuing description of this location raises the question whether defendant's U-turn was, in fact, in an intersection at all. Given the physical configuration, it could easily be argued that defendant's U-turn took place outside the intersection of 185th and Stepping Stone. Defendant, however, does not dispute that he was in an intersection at the time of his U-turn and for good reason. In the memorandum in support of his motion to suppress, defendant acknowledged that, if his U-turn was *not* in an intersection, then it was unlawful under ORS 811.365(1)(b), which prohibits U-turns between intersections on highways. So defendant took the position that he takes on appeal: that his U-turn was within an intersection but was not a turn that was prohibited by ORS 811.365(1)(a).

intersection. There is a traffic signal at the intersection and a white line across both lanes before the intersection. There is a sign at the intersection that states "stop here on red" with an arrow pointing to the white line. Past the stop line to the north, a third lane emerges on the left. That lane is marked with a left arrow indicating that it is a turn lane. A car may not enter the left-turn lane without first proceeding past the stop line. That turn lane proceeds past the traffic signal that controls the forward movement of traffic from the preceding stop line. From the turn lane, at a point after the signal, a person may turn left across the southbound lanes into a shopping center. A concrete island divides the southbound and northbound lanes of 185th until the end of the left-turn lane. The end of the turn lane is not controlled by a signal. Neither is the southbound traffic at that location controlled by a signal.

Beaverton Police Officer Lutu witnessed defendant's U-turn. Lutu believed that defendant's U-turn was illegal because traffic in that location was controlled by the signal at Stepping Stone. Lutu stopped defendant and, as a result of the stop, discovered that he was driving on a suspended license, leading to the charges in this case.

Defendant moved to suppress the evidence that he had been driving on a suspended license. His theory was that his U-turn did not violate ORS 811.365 and, consequently, that Lutu lacked probable cause to stop him for a traffic violation. *See, e.g.*, *State v. Boatright*, 222 Or App 406, 409, 193 P3d 78, *rev den*, 345 Or 503 (2008) (under Article I, section 9, of the Oregon Constitution, an officer must have probable cause to believe a driver committed a traffic violation to conduct a traffic stop). Specifically, defendant contended that, although the intersection in question is controlled by an electrical signal, his U-turn was not prohibited because the specific area he was in was not controlled by an electrical signal. The trial court denied the motion, agreeing with the state that the statute prohibits U-turns in any intersection controlled by an electrical traffic signal.

On appeal, the parties reiterate the arguments they made below about correct interpretation of ORS 811.365(1)(a),

which, as noted, bars U-turns "[w]ithin an intersection where traffic is controlled by an electrical signal." Defendant argues that "where" is modifying the second portion of the sentence, meaning "in a city, a U-turn is legal if it occurs within an intersection where traffic is not controlled by an electrical signal." In other words, defendant argues that U-turns are permitted at points within a signalized intersection where traffic is *not* controlled by the electrical signal and is prohibited only at points where traffic *is* controlled by the electrical signal. The state argues that the "where" modifies "an intersection," meaning U-turns are prohibited "*at any point* within a signal-controlled intersection." (Emphasis added.)

We review the trial court's denial of defendant's motion to suppress for legal error. *State v. Quigley*, 270 Or App 319, 320, 348 P3d 250 (2015). In this case, whether the trial court properly denied the motion to suppress turns entirely on the proper interpretation of ORS 811.365(1)(a). To determine a statute's meaning, we apply Oregon's well-established framework for statutory interpretation and examine its text and context, as well as any relevant legislative history with which we have been supplied or that we have obtained on our own. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (outlining the methodology).

As framed by the parties' arguments, the question before us is whether ORS 811.365(1)(a) prohibits U-turns in any intersection "where traffic is controlled by an electrical signal," as the state argues, or, instead, prohibits U-turns only within those particular locations, contained within an intersection, where traffic is controlled by an electrical signal, as defendant argues.

Beginning with the text, the rules of grammar weigh heavily in favor of the interpretation advanced by the state. "Although drafters, like all other writers and speakers, sometimes perpetuate linguistic blunders, they are presumed to be grammatical in their compositions." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (2012) (footnote omitted); *see State v. English*, 269 Or App 395, 399, 343 P3d 1286 (2015) (relying on the "grammatical structure" of the statute in dispute).

Applying a presumption of grammatical competency to ORS 811.365(1)(a), the "where" clause is an appositive clause modifying the noun "intersection." *The Chicago Manual of Style* §§ 5.225; 5.227 (17th ed 2017). When an appositive clause appears with no commas to separate it from the rest of the sentence, it typically provides essential information about the noun to which it refers. *Id.* at § 6.28. That is, as a grammatical matter, the phrase "where traffic is controlled by an electrical signal" is most naturally understood to describe the essence of the type of "intersection" in which U-turns are not permitted.

Had the legislature intended otherwise, it would have structured the statute differently. Consistent with principles of grammar, if the legislature had intended the statute to mean what defendant argues it does, it would have composed it so that "where traffic is controlled by an electrical signal" modified a word or phrase identifying only some subparts of an intersection. That is, the legislature likely would have written something like this: "U-turns are prohibited within the portions of an intersection where traffic is controlled by an electrical signal" or "U-turns are prohibited within in an intersection at those particular locations where traffic is controlled by an electrical signal." But that is not what the legislature wrote, and what it did write conveys a different meaning.

Although context does not supply much in the way of additional clues regarding the scope of the legislature's ban on U-turns in intersections, the legislative history of ORS 811.365 confirms, as the statute's words suggest, that the legislature intended to prohibit U-turns in any intersection busy enough to require a traffic signal. The provision at issue was proposed in its present form by the League of Oregon Cities (League) to the Senate Committee on the Judiciary in February 1975. The League explained that the purpose of the provision was to prohibit U-turns in intersections that were busy enough to require a signal: "If an intersection has been determined to be in need of signalization then it is indicative that it has enough traffic within it that unless otherwise posted, U-turns should be prohibited within that intersection." Exhibit A, Senate Committee on Judiciary, SB 1, Feb 20, 1975 (letter from League of Oregon

Cities). The legislature adopted the League's proposal. *See* Minutes, Senate Committee on Judiciary, Feb 12, 1975, 8. As the state observes, this "legislative history confirms that the legislature intended to prohibit making a U-turn in any intersection that 'has enough traffic within it' that it is 'in need of signalization.'"

In sum, correctly construed, ORS 811.365(1)(a) prohibits U-turns in any intersection with an electrical traffic control signal (unless "posted otherwise," which was not the case here). That means that Lutu had probable cause to stop defendant for an illegal U-turn upon observing defendant's maneuver at 185th and Stepping Stone. The trial court did not err when it denied defendant's motion to suppress evidence that resulted from the justified traffic stop.

Affirmed.

APPENDIX



