Submitted February 24, affirmed October 20, 2010, petition for review denied
January 14, 2011 (349 Or 601)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**CHRISTOPHER JOSHUA RUGGLES,**
*Defendant-Appellant.*

Yamhill County Circuit Court
MI080569; A140393

242 P3d 643

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

The question in this case is whether, in a prosecution for refusing "to obey a lawful order" by a police officer, ORS 162.247(1)(b), the state must prove that defendant knew that the order he refused to obey was lawful. The trial court ruled that such proof was not necessary. We agree.

The relevant facts are few and undisputed. A McMinnville police officer saw defendant, whom the officer apparently recognized, and decided to "run a status check" on him. The check revealed an outstanding warrant for defendant's arrest. When the officer ordered defendant to stop, defendant ran away, but the officer quickly apprehended him. Defendant was charged with violating ORS 162.247, which provides:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer * * *:

"(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer."

The charging information clearly indicated that defendant was charged under subsection (b); it stated that he "did unlawfully and knowingly refuse to obey a lawful order of Officer Marc Cerda, a person known by defendant to be a peace officer." Before trial, defendant requested a jury instruction that would have informed the jury that the state had to prove, among other things, that defendant "knew the order was lawful." After a colloquy between the court and defense counsel, the court ruled, "I don't believe that the law requires that the state prove that the defendant knew that the order was lawful, so I would not give that instruction to the jury, and won't require the state to prove that the defendant knew that the order to stop was lawful." Defendant was subsequently convicted and sentenced to 45 days in jail. This appeal ensued.

Determining whether a particular element of a crime requires a culpable mental state—and if so, which one—has been described as a "chronically vexing problem." *State v. Schodrow*, 187 Or App 224, 228, 66 P3d 547 (2003). As the courts have repeatedly pointed out since 1978, the statutes that address the issue are confusing. *See, e.g., State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978) ("a confusing appearance of circularity"); *State v. Andrews*, 174 Or App 354, 361, 27 P3d 137 (2001) ("tautological"); *State v. Rutley*, 202 Or App 639, 643, 123 P3d 334 (2005), *aff'd in part, rev'd in part*, 343 Or 368, 171 P3d 361 (2007) ("gibberish"). The difficulty stems from the language providing that a culpable mental state is required for any element "that necessarily requires a culpable mental state." ORS 161.095(2); ORS 161.115(1). Fortunately, this case does not require us to apply the problematic language. That is so because, as a preliminary matter, if a statute is outside of the criminal code and it "clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof," the state need not prove any culpable mental state and no further inquiry is necessary. ORS 161.105(1)(b); *State v. Jones*, 223 Or App 611, 617-18, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009). As we explain below, the "interfering with a peace officer" statute that defendant violated is outside of the criminal code, and it "clearly indicates" (as that phrase has been construed) a legislative intent to dispense with a culpable mental state requirement.

The statutes governing culpable mental states, including ORS 161.105(1)(b), were enacted as part of the Oregon Criminal Code of 1971. Or Laws 1971, ch 743, § 9. At the same time, the legislature enacted ORS 161.005, which lists the statutes that "shall be known and may be cited as Oregon Criminal Code of 1971." Or Laws 1971, ch 743, § 1. Thus, when ORS 161.105(1)(b) refers to laws "outside the Oregon Criminal Code," that phrase must cross-reference the list in ORS 161.005.[1]

---

[1] *But see State v. Miller*, 309 Or 362, 370, 788 P2d 974 (1990), where the Supreme Court suggested that the phrase "outside the Oregon Criminal Code" might have been intended to include only "the gaggle of miscellaneous offenses located throughout the Oregon Revised Statutes known affectionately as 'the .990 crimes.' These were [o]ffenses tacked on to the end of statutory chapters devoted to

The "interfering with a peace officer" statute at issue in this case is ORS 162.247. The list in ORS 161.005 includes "[ORS] 162.225 to 162.375," a series of statutes captioned "Obstructing Governmental Administration." It would therefore appear that ORS 162.247 is *included* in the Oregon Criminal Code and *not* covered by ORS 161.105(1)(b).

That appearance, however, is illusory. When ORS 162.247 was enacted, it was codified with that number and placed in the "Obstructing Governmental Administration" series not by the legislative assembly, but by legislative counsel. The statute is followed by this note: "[ORS] 162.247 was enacted into law by the Legislative Assembly but was not added to or made a part of ORS chapter 162 *or any series therein* by legislative action. See Preface to Oregon Revised Statutes for further explanation." (Emphasis added.) The Preface, in turn, explains that such notes "mean that the placement of the section was editorial and not by legislative action." Preface, 1 *2009 Oregon Revised Statutes* viii. We therefore conclude that ORS 162.247 is not included in the Oregon Criminal Code. That being the case, that statute is governed by ORS 161.105(1)(b), under which, as noted above, the state need not prove a culpable mental state for an element if the statute "indicates a legislative intent to dispense with any culpable mental state requirement" for that element.

 The Supreme Court and this court have discussed how to determine whether a statute clearly indicates a legislative intent to dispense with a culpable mental state requirement. *Rutley*, 343 Or at 375-77; *State v. Rainoldi*, 236 Or App 129, 135-40, 235 P3d 710 (2010). Of course, the ordinary techniques of statutory interpretation apply: text, context, legislative history, maxims, etc. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In addition, we have noted that culpable mental state questions call for some nuanced variations on the ordinary analysis. For example, ORS 161.105(1)(b) requires us to look for not only indications of

---

substantive concerns other than the criminal law." Thus, the court has suggested, the statutes that are listed in ORS 161.005 are not necessarily coextensive with the Oregon Criminal Code. *State v. Wolfe*, 288 Or 521, 525 n 3, 605 P2d 1185 (1980). At present, we discern no reason to translate the Supreme Court's 10- and 20-year-old suggestions into a holding.

legislative intent, but for *clear* indications. *Rainoldi*, 236 Or App at 135. In the same vein, we have noted that the drafters of the mental state statutes expressed general disapproval of "strict liability" offenses. *Id.* (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11(C) (July 1970)). The barrier that the state must overcome in order to establish that a statute indicates an intent to dispense with a culpable mental state, then, is a high one.

■ ■ Nonetheless, we conclude that the barrier is overcome here. Two strong arguments support the state's position. First, as the Supreme Court has noted, the legislature is more likely to have intended to dispense with a culpable mental state with respect to one element of an offense if other elements carry express culpable mental states, because the existence of even one culpable mental state defeats the argument that the statute imposes strict liability. *See State v. Irving*, 268 Or 204, 207, 520 P2d 354 (1974). ORS 162.247 is by no means a strict liability crime. To violate the statute, a person must *know* that the person from whom an order issues is a peace officer or a parole and probation officer. The person must *refuse* to obey the order, and that verb implies knowledge and intent (in contrast, for example, to *fail to obey*).

Second, and decisively, requiring a culpable mental state regarding the lawfulness of the refused order would severely complicate enforcement of the statute, if not render enforcement impossible. *See Rutley*, 343 Or at 376-77 (holding that the state need not prove that a defendant knew that he was distributing drugs within 1,000 feet of a school; likelihood that legislature intended such a requirement "is virtually nonexistent"); *State v. Miller*, 309 Or 362, 368, 788 P2d 974 (1990) (holding that the state need not prove that a DUII defendant knew he was intoxicated; such requirement "seems preposterous"); *State v. Engen*, 164 Or App 591, 603, 993 P2d 161 (1999), *rev den*, 330 Or 331 (2000) (legislative intent to dispense with culpable mental state requirement can be inferred where such a requirement would be "incongruous"); *Rainoldi*, 236 Or App at 138 (reviewing Supreme Court cases; concluding that overarching inquiry is whether imposing a culpable mental state requirement would "result

in a statute that is extremely difficult to enforce"). Whether a particular police order is "lawful" is frequently a complex question involving some of the most vexing and intractable issues in constitutional law. For example, a police order such as "Stop!" can be an unlawful seizure of a person under Article I, section 9, of the Oregon Constitution, depending on whether the order is accompanied by a sufficient show of authority and the officer who issues the order is subsequently found to have lacked reasonable suspicion to believe that criminal activity was afoot. *State v. Rodgers / Kirkeby*, 347 Or 610, 623-24, 227 P3d 695 (2010). The inquiry is addressed on a case-by-case basis, there are few if any bright line rules, and there is an almost infinite variety of variables—some of which, such as the officer's state of mind, could not possibly be known by a defendant. Likewise, an order to disperse might unlawfully interfere with a person's right of free expression under Article I, section 8, of the Oregon Constitution—a determination that can surely confound ordinary citizens and has in fact confounded even judges of this court. *See State v. Illig-Renn*, 189 Or App 47, 73 P3d 307 (2003) (interference with police officer statute is *not* unconstitutional), *rev'd*, 337 Or 327, 99 P3d 290 (2004) (interference with police officer statute *is* unconstitutional). It is difficult to imagine a prosecution in which the state *could* prove that a defendant knew or should have known that a particular order was lawful. We conclude that, clearly, the legislature intended to dispense with a culpable mental state requirement with respect to a defendant's knowledge that a particular police order is lawful.

Because ORS 162.247 is outside of the Oregon Criminal Code, and because the statute clearly indicates a legislative intent to dispense with a culpable mental state requirement with respect to the lawfulness of the order that defendant refused to obey, the state did not have to prove such a mental state and the trial court did not err in so ruling.

Affirmed.