No. 796 November 6, 2024 21

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS SCOTT MASKELL,
*Defendant-Appellant.*

Lane County Circuit Court
21CR21166; A176445

Jay A. McAlpin, Judge.

Argued and submitted July 6, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services, argued the cause and filed the reply brief for appellant. Also on the opening brief was Anna Belais, Deputy Public Defender.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.*

AOYAGI, P. J.

Affirmed.

_____
 * Lagesen, C. J., *vice* Jacquot, J.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for one count of unlawful use of a weapon (UUW), ORS 166.220 (1)(a), and one count of menacing, ORS 163.190. He challenges only his UUW conviction. The jury found defendant guilty of committing a single count of UUW by both means described in ORS 166.220(1)(a)—that is, it found both that he attempted to use a deadly weapon unlawfully against another and that he carried or possessed a deadly weapon with intent to use it unlawfully against another—resulting in a single conviction for violating ORS 166.220(1)(a). On appeal, defendant argues that the trial court erred by not giving either of his two alternative requested jury instructions on UUW. Defendant first requested an instruction that, to find him guilty, the jury had to find that he *knew* that his attempted or intended use of the weapon was "unlawful." Alternatively, if the court was unwilling to give that instruction, defendant requested an instruction that, to find him guilty, the jury had to find that he was *criminally negligent* as to his attempted or intended use being "unlawful." As explained below, we conclude that the trial court did not err in rejecting the requested jury instructions, because they are premised on a misunderstanding of the mental-state requirement for UUW. Accordingly, we affirm.

Where a party challenges the "trial court's refusal to give a requested jury instruction, we view the facts in the light most favorable to giving that instruction." *State v. Wolf*, 260 Or App 414, 416-17, 317 P3d 377 (2013). In this case, a detailed account of the facts is not necessary to our analysis. It is sufficient to say that, during an argument over a parking space, defendant brandished a gun and indicated that he would use it against the other party to the argument if she approached him. At the time, defendant subjectively believed that threatening her with a gun was lawful self-defense.

Defendant was charged with UUW, under both theories described in ORS 166.220(1)(a). *See* ORS 166.220(1)(a) ("A person commits the crime of unlawful use of a weapon if the person * * * [a]ttempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against

another, any dangerous or deadly weapon as defined in ORS 161.015."). For present purposes, we focus our discussion on the carry-or-possess theory of UUW, which required the jury to decide whether defendant carried or possessed a dangerous or deadly weapon "with intent to use [it] unlawfully against another." *Id*. As to that theory, defendant requested an instruction that, to find him guilty, the jury had to find not only that he carried or possessed a deadly weapon and that he intended to use it unlawfully—which tracks the statutory language—but also that defendant "was aware that the intended use of the weapon was not lawful."

In the alternative, if the trial court rejected that instruction, defendant requested an instruction that would have concluded with telling the jury that, to find him guilty, the jury had to find that defendant was criminally negligent as to the intended use being unlawful, *i.e.*, that defendant "failed to be aware of a substantial and unjustifiable risk that the intended use of the weapon was unlawful and the risk was of such nature and degree that the failure to be aware of it constituted a gross deviation from the standard of care that a reasonable person would observe in the situation."

The trial court declined to give either instruction, instead using the statutory language to instruct the jury.

Defendant contends that he was entitled to one or the other of his requested instructions. He begins his argument by invoking two well-established legal principles: first, that an element of an offense is "material" when it "define[s] whether a defendant has committed an offense," as opposed to defining "when and where a crime [can] be prosecuted," *State v. Owen*, 369 Or 288, 316-17, 505 P3d 953 (2022), and, second, that "every 'material element' of [an] offense ordinarily requires proof of a culpable mental state," *State v. Simonov*, 358 Or 531, 538, 368 P3d 11 (2016) (quoting ORS 161.095(2)). Defendant then reminds us that those principles apply equally to offenses outside the Oregon Criminal Code, including UUW, absent a clear legislative intent to dispense with a culpable mental state requirement. *See id.* at 537 n 2 (explaining that the foregoing propositions apply to offenses outside the Oregon Criminal Code, unless the

statute defining the offense "'clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof'" (quoting ORS 161.105(1)(b)); *State v. Rainoldi*, 351 Or 486, 491, 268 P3d 568 (2011) (describing application of ORS 161.105(1)(b)); *see also, e.g.*, *State v. Prophet*, 318 Or App 330, 335 n 3, 507 P3d 735, *rev den*, 370 Or 472 (2022) (explaining the legal framework).

With those principles in mind, defendant asserts that "unlawfully" is a material element of UUW, because it relates to whether a person has committed UUW, and that, as a material element, "unlawfully" requires proof of a culpable mental state, because there is no clear legislative intent to the contrary. Finally, defendant puts forward an argument that knowledge is the requisite mental state for the "unlawfully" element—with a backup argument for criminal negligence as the requisite mental state.

In response, the state accepts defendant's framing of the issue, including implicitly accepting that "unlawfully" is a material element of UUW, but argues that ORS 166.220 (1)(a) clearly indicates a legislative intent to dispense with any culpable mental state for "unlawfully." For that reason, the state argues, we should not attach any mental state requirement to "unlawfully" in ORS 166.220(1)(a).

The question presented is one of statutory construction, which is a question of law. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Seeking to discern the legislative intent, we are to consider the disputed statutory text in context, as well as any useful legislative history of which we are aware. *Id.* Ultimately, we are "responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). Here, as we will explain, we disagree with both parties' construction of the statute.

"In Oregon, criminal liability generally requires an act that is combined with a particular mental state. The statute defining an offense determines its applicable mental state (or mental states), as informed by the Oregon Criminal Code general culpability provisions, ORS 161.085 to 161.115."

*Simonov*, 358 Or at 537 (internal quotation marks, citation, and footnote omitted). For offenses within the criminal code, "[i]f * * * the statute does not prescribe a culpable mental state for all or some of the material elements of the offense, 'culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence.'" *Id.* (quoting ORS 161.115(2)). Absent a clear legislative intent to dispense with a culpable mental state, the same analysis applies to offenses outside the criminal code, including UUW. ORS 161.115(2) (so providing); *see, e.g.*, *Rainoldi*, 351 Or at 491.

Here, we conclude that the statutory text *does* prescribe a culpable mental state—and that "unlawfully" is part of that prescribed culpable mental state, rather than a standalone element of the offense—which is dispositive of the question before us.

A person commits UUW if the person "carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015." ORS 160.220(1)(a). It may be debatable how exactly that language should be divided into elements, but, at a minimum, a person must engage in the conduct of carrying or possessing, while having the "intent to use unlawfully against another."[1]

The "intent to use unlawfully against another" is itself the culpable mental state for the carry-or-possess theory of UUW. We disagree that "unlawfully" can be separated from the specified mental state and then evaluated separately for application of its own mental state. To the contrary, the word "unlawfully" appears in the middle of the clause defining the prescribed mental state, modifying the verb "to use," which, in turn, describes what a person must intend to do with the weapon—that is, what must be in the person's mind when they act. It is a critical part of the specific intent requirement imposed by the legislature, *not* a separate element of UUW subject to its own mental-state analysis.

---

[1] We express no opinion on whether the "dangerous or deadly weapon" requirement is part of the conduct element or is a circumstance element. *See generally Owen*, 369 Or at 302-05 (discussing various ways to divide offenses into elements).

We took a similar approach to evaluating the requisite culpable mental state for a different crime in *State v. West*, 298 Or App 125, 445 P3d 1284, *rev den*, 365 Or 722 (2019). In that case, the defendant was charged with second-degree disorderly conduct, which can be committed in a variety of ways. The defendant was charged with committing it by, "'with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, *** [o]bstruct[ing] vehicular or pedestrian traffic on a public way.'" *Id.* at 129 n 4 (quoting ORS 166.025 (1)(d)). The defendant argued—first in a demurrer and later in requesting jury instructions—that the state was required to prove that he intentionally obstructed traffic. *Id.* at 128-29. Specifically, the defendant argued that the statutorily prescribed mental state (which everyone agreed contained two alternative mental states), *i.e.*, "'*with intent* to cause public inconvenience, annoyance or alarm *or recklessly creating a risk* thereof,'" was "a stand-alone element" that was separate from the relevant conduct element of obstructing traffic. *Id.* at 129 (quoting ORS 166.025(1)(d) (emphases added)). It followed, the defendant argued, that there was no statutorily prescribed culpable mental state for the conduct element of obstructing traffic and that the court needed to decide whether intent, knowledge, recklessness, or criminal negligence was the applicable culpable mental state for that conduct element. *Id.* at 129-30.

We disagreed. We examined each of the stated alternative culpable mental states to determine whether it is a standalone element or, instead, attaches to the conduct element. *Id.* at 131-33. Regarding "with intent to cause public inconvenience, annoyance or alarm," we concluded that that mental state attaches to the conduct element. *Id.* at 132. It "specifies the mental state 'with' which a defendant must obstruct traffic to commit the crime of second-degree disorderly conduct." *Id.* at 132. The specifically defined mental state thus limited the scope of the crime: "[ORS 166.025 (1)(d)] does not make every intentional obstruction of traffic a crime. Rather, it makes the act a crime only if a defendant obstructs traffic" with the specified intent. *Id.*; *see also id.* at 132 n 5 (noting that the legislature "could have prescribed a general mental state, such as intentionally obstructing

traffic[,]" but chose to prescribe a specific mental state—
"the intent to create public inconvenience, annoyance, or
alarm"—to avoid the statute "sweeping too broadly"). "By
stating that a person will commit the crime of second-degree
disorderly conduct if he or she obstructs traffic 'with' a spe-
cific intent, the legislature identified the mental state with
which a person must act." *Id.* at 132.

Despite slightly different phrasing, we concluded
that the alternative mental state—"recklessly creating
a risk" of public inconvenience, annoyance, or alarm—
operates in the same way. *Id.* at 133. As to both alterna-
tives, "the legislature described the mental state with which
the person must act to commit the crime. And, in both
instances, the legislature required proof of a specific mental
state rather than a general one." *Id.* "As we read the text of
ORS 166.025, proof of either mental state specified in ORS
166.025(1) coupled with proof of one of the acts specified in
ORS 166.025(1)(a) to (f) is sufficient, without more, to estab-
lish the crime of second-degree disorderly conduct." Because
the legislature prescribed a specific culpable mental state
with which a person must engage in the conduct to commit
the offense, "[n]o more is required." *Id.* at 132.

Similarly, here, the legislature has identified a spe-
cific mental state—"with intent to use unlawfully against
another"—that attaches to the conduct element—carrying
or possessing. ORS 161.220(1)(a). The word "unlawfully,"
placed in the midst of the specified culpable mental state, is
not subject to its own culpable mental state analysis.

We therefore conclude that the trial court did not
err in refusing to give defendant's requested instructions on
the carry-or-possess theory of UUW, because "unlawfully" is
not itself an element to which a mental state might attach.
Given that defendant's arguments pertain only to whether
"unlawfully" is a standalone element to which a culpable
mental state attaches—which we have concluded it is not—
we stop there and leave for another day any possible dispute
as to the correct construction of "unlawfully" as part of the
specific-intent element for the possess-or-carry theory.

Because defendant was charged with a single count of UUW (Count 1), the jury found defendant guilty on both theories of UUW charged in that count, and either theory supports the conviction on that count, we need not address defendant's arguments regarding his requested jury instructions on the alternative "attempt" theory of UUW.

Affirmed.