694 February 12, 2025 No. 84

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERRY JACOB OLDFIELD,
*Defendant-Appellant.*

Columbia County Circuit Court
22CR26780; A181162

Denise E. Keppinger, Judge.

Submitted October 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Silberman, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals a judgment convicting him of fleeing or attempting to elude a police officer, ORS 811.540(1)(b)(A), and reckless driving, ORS 811.140. In his sole assignment of error, defendant contends that the trial court erred by declining to give his requested instruction requiring the jury to find that defendant knew that the vehicle pursuing him was an "appropriately marked" police vehicle. After reviewing for legal error, *State v. Prophet*, 318 Or App 330, 332, 507 P3d 735, *rev den*, 370 Or 472 (2022), we affirm.

We briefly review the law as it relates to culpable mental states: "[C]riminal liability generally requires an act that is combined with a particular mental state. The statute defining an offense determines its applicable mental state (or mental states), as informed by the Oregon Criminal Code general culpability provisions, ORS 161.085 to 161.115." *State v. Simonov*, 358 Or 531, 537, 368 P3d 11 (2016) (internal quotation marks, citation, and footnote omitted). And in determining if the legislature intended for a culpable mental state to attach to an element, or what that mental state should be, our typical framework for statutory interpretation applies: we consider the statutory text, its context, "as well as any useful legislative history of which we are aware." *State v. Maskell*, 336 Or App 21, 25, 560 P3d 711 (2024) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)); *Prophet*, 318 Or App at 347 ("For statutes that contain an explicit mental state, that mental state applies to each nonprocedural element of the crime *unless* the text, context, and legislative history indicate that the legislature intended otherwise." (Emphasis added.)).

However, that framework carries an additional gloss when analyzing offenses outside the criminal code, like fleeing or attempting to elude a police officer: elements may not carry a culpable mental state at all if the statute reflects a "clear" legislative intent to omit one. ORS 161.105(1)(b) (noting that an element of an offense defined by a statute outside of the criminal code will have no culpable mental state if the statute "clearly indicates a legislative intent to dispense with a culpable mental state" as to that element); *State v. Ruggles*, 238 Or App 86, 90-91, 242

P3d 643 (2010), *rev den*, 349 Or 601 (2011) ("[C]ulpable mental state questions call for some nuanced variations on the ordinary analysis. For example, ORS 161.105(1)(b) requires us to look for not only indications of legislative intent, but for *clear* indications." (Emphasis in original.)); *Prophet*, 318 Or App at 335 n 3 (first citing ORS 161.105(1), then citing *State v. Rainoldi*, 351 Or 486, 491, 268 P3d 568 (2011)). If the legislature did not "clearly indicate[]" that no mental state should apply to a particular element, and the statute does contain a mental state, we apply that mental state to each nonprocedural element of the crime unless the text, context, and legislative history indicate that the legislature intended otherwise. *Prophet*, 318 Or App at 347, 347 n 8.

To determine whether the legislature has "clearly indicate[d]" an "intent to dispense with a culpable mental state" for an element, we apply a nonexclusive four-factor test, outlined by the Supreme Court in *Rainoldi*, examining (1) "the text of the statute defining the offense itself"; (2) "the nature of the element at issue"; (3) "the legislative history of the statute that defines the offense at issue"; and (4) whether "requiring proof of *** a mental state could frustrate the obvious purpose of the statute." 351 Or at 492-95; *see also Simonov*, 358 Or at 543 (noting *Rainoldi*'s "four-factor test"). Applying that test here, we conclude that the legislature "clearly indicate[d]" its intent that no culpable mental state should apply to the element of the police car being appropriately marked.

Starting with the text, in relevant part, ORS 811.540 provides,

"(1)   A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)   The person is operating a motor vehicle; and

"(b)   A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A)   The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B)   The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

The text cuts against defendant's argument. First, the text itself does not grammatically support the application of a "knowing" mental state to the element of whether a police vehicle is "appropriately marked." The word "knowingly" appears directly next to the clause "flees or attempts to elude," and not the "vehicle appropriately marked" clause. *See State v. Christian*, 354 Or 22, 28, 307 P3d 429 (2013) (explaining that the adverb "recklessly" served to modify only "the phrase that immediately follows it"); *State v. Wiborg*, 285 Or App 131, 137, 396 P3d 258 (2017) (observing that "grammatical structure" of statute "offers helpful clues to the statute's meaning"); *Maskell*, 336 Or App at 26 (looking to location of adverb within clause to evaluate requisite culpable mental state).

In fact, the legislature placed the requirement of the vehicle being "appropriately marked" in a separate subsection, *before* "knowingly." Although we have previously considered how far "down" a sentence a mental state may "travel," *Prophet*, 318 Or App at 348 (citing *State v. Schodrow*, 187 Or App 224, 230, 66 P3d 547 (2003)), it is far less likely the legislature intended for a mental state to travel "up" into a prior subsection. Thus, although not dispositive, the placement of the adverb "knowingly" directly next to "flees or attempts to elude"—and in a wholly different subsection after the "appropriately marked" element—provides some indication that the legislature did not intend for it to apply.

We turn next to the "nature of the element at issue," *Rainoldi*, 351 Or at 493. The parties both contend, and we agree, that the "appropriately marked" element is a "circumstance" element. *See Simonov*, 358 Or at 542 (defining "circumstance" element); *State v. Rapp*, 306 Or App 265, 267 473 P3d 1126, *rev den*, 367 Or 291 (2020) (explaining that ORS 811.540 criminalizes knowingly fleeing or eluding an officer "under certain statutorily specified circumstances"). Unlike "conduct" elements, "that describe the nature or essential character of the defendant's act or omission," *Simonov*, 358 Or at 541, "circumstance" elements "do[] not change the essential character of the prohibited conduct."

*Id.* at 542 (noting that value of property for crime of theft "is a circumstance; it is an accessory fact that accompanies, not modifies, the defendant's conduct"). For the crime of "fleeing or attempting to elude a police officer," the "essential character of the prohibited conduct" is the act of fleeing or eluding a pursuing police officer.

Historically, "circumstance" elements that the legislature considered to be "attendant" to the commission of the offense for crimes outside the criminal code generally did not require proof of a culpable mental state. *Rainoldi*, 351 Or at 493-94; *see also State v. Turnidge (S059155)*, 359 Or 364, 502, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017) ("When the legislature makes an element an 'attendant circumstance' to the commission of an offense, as contrasted with an aspect of the prohibited conduct, the element generally does not require proof of a mental state, unless, of course, the legislature indicates otherwise."). For example, in *State v. Rutley*, 343 Or 368, 370, 171 P3d 361 (2007), the Supreme Court held that, for the crime of delivery of a controlled substance, the attendant circumstance that the delivery occur within 1000 feet of school did not carry a culpable mental state. *Id.*; *see also Rainoldi*, 351 Or at 503 (no culpable mental state for attendant circumstance status of being a felon for the purpose of the offense of felon in possession).[1] Thus, the type of element factor, too, weighs in favor of concluding that the legislature clearly intended to dispense with a mental state as to the "appropriately marked" element.

Most importantly, requiring proof of a culpable mental state as to the element of the police car's markings

---

[1] To be clear, for offenses inside the criminal code non-procedural "attendant circumstance" elements are "material element[s] of the offense that necessarily require[] a culpable mental state." ORS 161.095(2); *see also Prophet*, 318 Or App at 350 (all elements other than venue, statute of limitations, and the like require mental state). However, for offenses outside the criminal code, whether an element is an "attendant circumstance" is one of the considerations in the multi-factor analysis to determine whether the legislature clearly intended to dispense with a mental state. *Rainoldi*, 351 Or at 493-94 ("[T]here is a difference *** between elements of an offense that pertain to the conduct of the defendant and those that pertain *** to an 'attendant circumstance' to the commission of the offense. The former type of element is generally regarded as the type that requires proof of a culpable mental state, while the latter is not."); *cf State v. Jimenez-Correo*, 248 Or App 200, 207, 273 P3d 232 (2012) (applying test from *Rainoldi* but noting that "classifying the element in that way in this case does not evince a clear legislative intent regarding culpable intent one way or another").

would frustrate the obvious purpose of the statute. *Rainoldi*, 351 Or at 492 (final factor of test to determine when legislature "clearly indicated" an intent to dispense with culpable mental state for element of offense outside of criminal code); *Ruggles*, 238 Or App at 91. The statute was enacted as part of the Oregon Vehicle Code, the purpose of which is "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state." ORS 801.020(11)(a); *see State v. Redding*, 325 Or App 115, 121 n 4, 528 P3d 314 (2023) (so stating); *State v. Thomas*, 104 Or App 126, 130, 799 P2d 208 (1990) (looking to ORS 801.020(11)(a) to interpret other provisions in the vehicle code). To carry out the policy of "provid[ing] maximum safety," the legislature has chosen to make it a crime for a person to knowingly flee or attempt to elude a police officer in an appropriately marked vehicle that gives a signal to stop. Requiring a culpable mental state would frustrate the purpose of the vehicle code, because it would allow defendants to escape liability merely because they did not know whether a police car was appropriately marked—or did not know what markings were "appropriate."

When considering whether including a culpable mental state would frustrate obvious legislative intent, *Ruggles* is instructive. 238 Or App at 91. In that case, the defendant was charged with refusing "to obey a lawful order" by a police officer, ORS 162.247(1)(b). The issue was whether the state needed to prove that the defendant knew that the order he refused to obey was lawful. We held, "decisively," that the legislature clearly intended to dispense with a culpable mental state as to the lawfulness of the order, because such a requirement "would severely complicate enforcement of the statute, if not render enforcement impossible." *Id.* In doing so, we noted that the question of whether an order is lawful or not is complex and difficult for ordinary citizens to resolve. *Id.* at 92 ("It is difficult to imagine a prosecution in which the state *could* prove that a defendant knew or should have known that a particular order was lawful." (Emphasis in original.))

Similarly, the average person is unlikely to have mastered the intricacies of police vehicle markings, or even know which markings render a vehicle "appropriately

marked." In fact, such a requirement would carry with it a perverse incentive for motorists to actively avoid knowing whether the police car pursuing them had appropriate markings. *See Rutley*, 343 Or at 376 (holding that no mental state required for 1,000-foot distance requirement because it would "create an incentive for drug dealers *not* to identify schools, and *not* to take into consideration their distance from them in engaging in their illegal activity" (emphases in original)). Under defendant's proposed construction, a driver who knowingly flees a police officer but lacks awareness of the officer's vehicle's markings has, perplexingly, not committed the crime of fleeing a police officer. And even under a lesser criminal negligence culpable mental state, a defendant could still escape liability by showing that their failure to be aware of whether the car was appropriately marked was not "a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The legislature could not have intended such a result.

Accordingly, the trial court did not err by refusing to give a jury instruction that misstated the law, because the legislature clearly intended to dispense with a culpable mental state as to the "appropriately marked" element of the offense of fleeing or attempting to elude a police officer.

Affirmed.